IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS — EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 14-41230 |
| HORIZON GROUP MANAGEMENT, LLC, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ANDREW J. MAXWELL, trustee for the ) | |
| estate of Horizon Group Management, LLC, ) | |
| ) | Hon. Timothy A. Barnes |
| Plaintiff, ) | |
| v. ) | Adv. Proc. No. 16-00394 |
| ) | |
| DANIEL MICHAEL; et al; ) | |
| ) | |
| Defendants. ) | |

**RESPONSE IN OPPOSITION TO MOTION TO COMPEL**

Andrew J. Maxwell ("Plaintiff" or "Trustee"), as Chapter 7 trustee for the estate of Horizon Group Management, LLC (the "Debtor" or "Horizon Management"), Bauch & Michaels, LLC, the Trustee's special litigation counsel and subpoena respondent ("Trustee Counsel") and Donna Raine ("Trustee Accountant") hereby submit their Response in Opposition to Defendants' Motion to Compel [ECF No. 111]:

**SUMMARY OF ARGUMENT**

The Defendants have issued subpoenas to, *inter alia*, Trustee's Counsel and Trustee's Accountant seeking to depose and obtain documents relating to their litigation strategies, including their investigation and preparation of the Trustee's claims for trial. The Trustee and Trustee Counsel's communications with Class Counsel and Trustee Accountant are not within the scope of Rule 7026 and are otherwise protected from disclosure by the attorney-client privilege, the common

interest exception to the attorney-client privilege, and work product doctrine. Moreover, the Defendants' attempt to interrogate opposing counsel regarding the case is almost always improper, and it is in this case. Finally, the pretext for the discovery (whether a "golden creditor" exists) is indisputable. The Court should deny the Motion to Compel.

### BACKGROUND

On July 1, 2016, the Trustee filed his Complaint initiating this adversary proceeding [ADV. ECF No. 1]. On December 13, 2017, the Court sustained the Trustee's Third Amended Complaint with respect to claims for breach of contract, unlawful distributions, fraudulent transfers, equitable subordination, and alter ego/veiling piercing [ADV. ECF No. 93 and 94]. The material allegations of the Complaint are premised on the Debtor's financial condition, the Defendants' conduct, and the substantive orders of the State Court [ADV. ECF No. 78]. The State Court's orders and the date, amount, and recipients of the Debtor's transfers to, or for the benefit of the Defendants, are not in dispute [ADV. ECF No. 95]. Most importantly, and particularly relevant to the discovery dispute, it is undisputed that the Debtor's conduct that gave rise to the Class Counsel claims occurred during 2007-09. Therefore, such claims arose prior to any of the transfers the Trustee seeks to avoid. In fact, other than the Defendants' summary denials that they acted with fraudulent intent, that the Debtor was insolvent, and that they failed to provide reasonably equivalent value in exchange for the millions of dollars of transfers, limited factual disputes exist.

On June 13, 2018, the Defendants served document requests upon the Trustee and later served almost identical deposition and documents subpoenas on Trustee Counsel, Class Counsel, Class Counsel's bankruptcy counsel, and Trustee Accountant. The Trustee, Trustee Counsel, and Trustee Accountant filed timely Responses and Objections to the requests and subpoenas, primarily on the basis that the requests were beyond the scope of discovery and sought privileged and work product documents. After a discovery conference in which the Defendants acknowledged that Trustee Counsel's actions in connection with the case were exclusively in "anticipation of litigation or for trial," the Defendants nonetheless filed their first Motion to Compel. [ADV. ECF No. 111]. On December 21, 2018, the Court ordered the Trustee, Trustee Counsel, Class Counsel, Class Counsel's bankruptcy counsel, and Trustee Accountant to produce certain responsive documents and a privilege log. [ADV. ECF No. 130].

The Trustee, Trustee Counsel, Class Counsel, Class Counsel's bankruptcy counsel, and Trustee Accountant produced voluminous privilege logs and certain non-privileged documents. As reflected by the privilege logs and the production, Trustee Counsel communicated with Trustee Accountant regarding general accounting and tax issues which have arisen in the case and which form the factual basis for a number of the Trustee's claims. Likewise, Trustee Counsel communicated with Class Counsel regarding background, the status of investigation, and litigation strategies. These communications contain the mental impressions, conclusions, opinions, and legal theories of Trustee Counsel.

The privilege logs demonstrate that all of the responsive documents are either privileged or work product. Even so, the Defendants filed their second motion to compel production, which contends that they need discovery of the Trustee, Trustee Counsel, Class Counsel, Class Counsel's bankruptcy counsel, and Trustee Accountant's communications in order to challenge whether a "golden creditor" exists. [ADV. ECF No. 135].

## ARGUMENT

The documents sought are not subject to production because they are privileged or work product. Moreover, the requested documents are not relevant to the Defendants' claims or defenses, and the burden that would be imposed upon the estate far outweighs the probative value of the documents to the Defendants. This is particularly true with respect to the Defendants' putative challenge to whether there is a "golden creditor" to support the Trustee's Section 544 claims with respect to transfers that occurred between two and four years prior to the Petition Date. This discovery is premised on the Defendants' argument that Class Counsels' claim did not arise until the State Court entered the Fee Order, a position that is clearly contrary to Seventh Circuit precedent. *See St. Catherine Hosp. of Ind., LLC v. Ind. Family & Soc. Servs. Admin.,* 800 F.3d 312 (7th Cir. 2015) (A claim arises at the time of the conduct that ultimately gives rise to the liability.) Since the Defendants cannot challenge Class Counsel's "golden creditor" status, discovery regarding the Unpaid Class Member claims is not relevant to the Defendants' defense. *Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, 424 B.R. 95 (Bankr. S.D.N.Y. Feb. 16, 2010).

A. THE TRUSTEE AND TRUSTEE COUNSEL'S COMMUNICATIONS WITH CLASS COUNSEL AND TRUSTEE ACCOUNTANT ARE PROTECTED BY ATTORNEY-CLIENT PRIVILEGE.

The Trustee and Trustee Counsel's communications with Trustee Accountant are protected from disclosure by the attorney-client privilege and the documents embodying those communications are further protected by the work product immunity. Trustee Counsel's communications with Class Counsel and their attorney (Robbins) and the Debtor's former attorneys (Skadden) are similarly protected by the attorney-client privilege. Likewise, the work product immunity protects the documents embodying such communications. Such protection exists directly with respect to the communications with the Debtor's former attorneys and under the common interest exception with respect to the communications with Class Counsel and their attorneys; and by the work product doctrine without regard to whether the communications are privileged.

The Defendants do not dispute that the attorney-client privilege protects the documents that were exchanged between the attorneys and their clients regarding the Trustee's claims. The Defendants, however, contend that the documents exchanged among the Trustee, Trustee Counsel and Class Counsel are not privileged because they were disclosed to third parties. The Defendants' argument fails, however, because the communications are protected by the common interest doctrine.

The purpose of the common interest doctrine is to "foster communication" between parties that share a common interest and to "protect the confidentiality of communications . . . where a joint . . . effort or strategy has been decided upon or undertaken by the parties and their respective counsel." *Evans*, 113 F.3d 1457, 1467

(7th Cir. 1997). The common interest doctrine applies to parties who have a "common interest" in current or potential litigation, either as actual or potential plaintiffs or defendants. *Beneficial Franchise Co. v. Bank One, N.A.,* 205 F.R.D. 212, 216 (N.D. Ill. 2001). To maintain the privilege, the common interest must relate to a litigation interest, not simply a business interest. *Id.* If there is some or even substantial overlap between the litigation and business interests, the common interest doctrine still applies so long as a "community of interest" can be established with respect to the documents. *See Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001). "It is the commonality of interests which creates the exception, not the conduct of the litigation." *Waste Management, Inc. v International Surplus Lines Ins. Co.*, 579 N.E.2d 322, 329 (Ill. 1991). Thus, "where persons confer with counsel for the purpose of advancing their joint defense, the conference is sealed from outside view." *In re Quantum Chemical/Lummus Crest*, No. 90 C 778, 1992 U.S. Dist. LEXIS 5448 (N.D. Ill. March 27, 1992) (applying Illinois law).

The common interest rule "is not limited to parties who are perfectly aligned on the same side of a single litigation." *Cadillac Ins. Co. v. American Nat. Bank of Schiller Pk.*, Nos. 89 C 3267, 91 C 1188, 1992 U.S. Dist. LEXIS 2815, at *16 (N.D. Ill. March 12, 1992). Rather, parties who assert a common interest as the basis for their assertion of privilege (where otherwise it would not exist due to the shared communications), must simply demonstrate "actual cooperation toward a common legal goal" with respect to the documents they seek to withhold. *See Strougo v. BEA Assoc.*, 199 F.R.D. at 520. This shared interest must be identical, not simply similar.

6

*Id.* at 525. The parties asserting the common interest may demonstrate an identity of interest, however, by showing that the sharing of these documents was for the purpose of cooperating in pursuit of "a common legal goal." *United States v. Evans*, 113 F.3d at 1467 (communication of privileged materials made in connection with or in furtherance of a common interest does not waive privilege). This common goal may include pursuit of litigation against a common adversary. *See Allendale Mut.Ins. Co. v. Bull Data Sus.*, 152 F.R.D. 312, 139-40 (N.D. Ill. 1993).

Here, the Trustee and Class Counsel have an identical shared legal interest in avoiding and recovering multiple fraudulent transfers from the Defendants and initial transferees, as well as holding the Defendants liable for the estate's debts by pursuing alter ego and veil piercing remedies. In fact, with respect to the Trustee's claims under Section 544, the state law fraudulent transfers counts, unlawful dividend, and alter ego and veil piercing remedies, the Trustee is effectively asserting Class Counsel's claims: Upon the filing of the bankruptcy case, the Bankruptcy Code granted the Trustee exclusive standing, to the exclusion of Class Counsel, to assert such claims on behalf of all creditors. *Koch Refining v. Farmers Union Cent. Exchange, Inc.,* 831 F.2d 1339, 1345 (7th Cir. 1987). Thus, the Trustee and Class Counsel are entitled to assert the attorney client privilege over communications with respect to their collaborative efforts to remedy the Defendants' fraudulent conduct. *Dexia Credit Local v. Rogan,* 231 F.R.D. 268, 270 (N.D. Ill. 2004).

In *Dexia Credit*, the court held that communications between the debtor (a state court appointed a custodian for the debtor that later filed a voluntary petition

7

for the debtor) and the debtor's major creditor regarding the investigation and pursuit of claims against insiders were protected from disclosure, because the creditor and the debtor were pursuing their common interest in holding the defendants liable for the diversion of the debtor's assets. The court specifically rejected the argument that the creditor and the debtor did not share a common legal interest because their interests, and the claims they were asserting, were not identical. *Id.*

In fact, the courts have uniformly held that in the context of a bankruptcy trustee and creditors committee's pursuit of insiders for fraudulent transfers and other remedies, the bankruptcy trustee and creditors share a common legal interest with respect to their communications regarding the pursuit of such claims. *In re Horvath*, No. 13-34137, 2017 Bankr. LEXIS 652 (Bankr. N.D. Ohio Mar. 10, 2017) (trustee's counsel's communications with major creditor regarding litigation effecting recoveries by the estate were protected by the common interest exception); *Schmidt v. Rodriguez (In re Rodriguez)*, Nos. 10-70606 & 11-7012, 2012 Bankr. LEXIS 3620 (Bankr. S.D. Tex. Aug. 7, 2012) (trustee's counsel's communications with petitioning creditors attorneys protected by the common interest exception and work product immunity.); *In re AGE Ref., Inc.*, 447 B.R. 786 (Bankr. W.D. Tex. 2011) (common interest exception protected communications between Trustee's counsel and creditor's counsel regarding fraudulent transfer and preference actions of the estate); *In re Leslie Controls, Inc.*, 437 B.R. 493, 496 (Bankr. D. Del. 2010) (committee and future claims representative had a common interest in maximizing insurance recoveries and therefore had shared legal interest that supported privilege); *In re*

8

*Hardwood P-G, Inc.*, 403 B.R. 445 (Bank. W.D. Tex. 2009) (communications among attorneys for creditors committee, liquidating trust, and accountants investigating potential fraudulent transfer and preference claims protected from disclosure by common interest and work product doctrine). The Defendants completely ignore such authorities.

Rather, the Defendants rely upon two inapposite decisions. *Grochocinski* v. *Mayer, Brown Row & Maw*, LLP, 251 F.R. D. 316 (N.D. Ill. 2008) involved a highly unusual fact pattern involving a claim that the debtor's attorneys had committed malpractice with respect to the creditor's claim against the debtor resulting in the creditor's claim being established, when it otherwise would not have been established. Thus, the creditor and the estate had no common litigation interest that was being pursued. Here, the Trustee and Class Counsel have a common interest in prosecuting the fraudulent transfer claims and alter ego remedies against the Defendants. In fact, the Trustee has effectively stepped into the shoes of the creditors and is asserting their non-bankruptcy law claims and remedies.

Likewise, *Stanziale v. Versa Capital Mgmt., LLC,* 584 B.R. 495 (Bankr. D. Del. 2018) involved "financial" communications between the trustee and a litigation target of the estate, the debtor's major lender. The creditor's committee and its counsel (who now represented the trustee) had alleged in a draft complaint that the lender had engaged in wrongful conduct and was solely responsible for the loss of value of the Debtor. The trustee later settled with the lender, but the lender remained a beneficiary of the trustee's future litigation recoveries. After the lender settlement,

the trustee filed claims for breach of fiduciary duty against the debtor's insiders alleging that their conduct, not the lender's, had resulted in the loss in value of the Debtor. The defendant-insiders sought discovery to explain the change in position. The trustee's change in position was in fact the primary reason that the court found that the documents were not privileged. 584 B.R. at 501. The court simply found that communications with an adverse party were not protected by the common interest doctrine. The Trustee has taken no inconsistent positions in this case. The Trustee has always contended that the Defendants orchestrated a fraudulent scheme to avoid the consequences of their systematic violations of consumer protection laws in order to further enrich themselves at the expense of creditors. The Trustee and Class Counsel are not adverse. The Trustee and the creditors have demonstrated their pursuit of a common litigation objection.

The Trustee has not waived the attorney-client privilege with respect to his communications among Trustee Counsel, Class Counsel and Trustee Accountant. The Trustee and Trustee Counsel's communications with Class Counsel (the non-bankruptcy law holders of the claims the Trustee is asserting) are protected under the "common interest exception."

    B.    THE WORK PRODUCT DOCTRINE PROTECTS THE TRUSTEE AND TRUSTEE COUNSEL'S COMMUNICATIONS WITH CLASS COUNSEL AND TRUSTEE ACCOUNTANT AND TRUSTEE ACCOUNTANT'S WORK PRODUCT

The work product doctrine also protects these communications among Trustee Counsel, Class Counsel, and Trustee Accountant. *Niagara Mohawk Power Corp. v. Megan-Racine Assocs. (In re Megan-Racine Assocs.),* 189 B.R. 562 (Bankr. N.D.N.Y. 1995). Federal Rule of Civil Procedure 26(b)(3) codifies the doctrine, providing that

"a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," unless "the party shows that it has a substantial need for the materials . . . and cannot, without undue hardship, obtain their equivalent by other means." Fed R. Civ. P. 26(b)(3)(A) (i) and (ii). But, even if the court orders discovery or such material "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation. Fed R. Civ. P. 26(b)(3)(B). Thus, even if the Court ordered protection of the documents, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed R. Civ. P. 26(b) (3)(B). As a practical matter, this would require the Court to redact the entirety of the documents.

The work-product privilege serves "dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E. v. S. Berwyn Sch. Dist. 100,* 600 F.3d 612, 621-22 (7th Cir. 2009); see also *Stanziale v. Career Path Training Corp. (In re Student Fin. Corp.),* 2006 U.S. Dist. LEXIS 86603 (E.D. Pa. Nov. 29, 2006) (creditors' investigative documents were protected by work product even though creditor was not party to trustee's adversary proceeding.) The work-product rule is designed "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories

11

and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385, 91 L. Ed. 451 (1947)); *see also Hickman v. Taylor*, 329 U.S. 495, 510 - 11, 67 S. Ct. 385, 91 L. Ed. 451 (1947) (without the privilege, "much of what is now put down in writing would remain unwritten"); *Fleet Nat. Bank v. Tonneson & Co.*, 150 F.R.D. 10, 14 (D. Mass. 1993) (without privilege, counsel "will be far more circumspect in what they put down" in writing).

Whether the work product privilege applies depends on the circumstances of the particular case. *Wilder v. World of Boxing LLC*, 324 F.R.D. 57, 62 (S.D.N.Y. 2018). But, attorney emails to parties and witnesses discussing or investigating potential or pending litigation will necessarily constitute work product. *Id.* (attorneys' emails discussing potential claim, plan of action, and litigation strategies were protected by work product with need to determine whether they were also privileged).

The Defendants have not suggested that the documents they seek are anything other than trial preparation materials protected by Fed. R. Civ. P. 26(b)(3) and (4). The Defendants have likewise not attempted to show "substantial need" or "undue hardship" to overcome the presumption of the documents not being discoverable. *In re Hardwood P-G, Inc.*, 403 B.R. at 462-64. The documents that Trustee Counsel and Trustee Accountant used in their investigation are available to the Defendants. In fact, they are the Defendants' own documents.

Finally, Defendant have not suggested that they are prevented from deposing the unpaid class claimants to determine the validity of their claims. "[T]here is in

general no justification for discovery of the statement of a person contained in work product materials when the person is available to be deposed." *Gay v. P. K. Lindsay Co., Inc.*, 666 F.2d 710, 713 (1st Cir. 1981). Plaintiff, therefore, has not demonstrated that the documents must be produced under Federal Rule of Civil Procedure 26(b)(3)(A). *Drury v. Bernhardt*, 2018 U.S. Dist. LEXIS 205922, at *3-5 (D. Me. Dec. 6, 2018). Defendants will not suffer any undue hardship if they are required to perform their own analysis of the facts.

### C. Trustee Counsel Is Not a Proper Subject of Discovery

The Defendants' document requests and deposition notice are simply an attempt to interrogate Trustee Counsel regarding the case. The courts rigorously limit attempts to obtain discovery from opposing litigation counsel because of its detrimental impact on the efficient conduct of the litigation and the potential for abuse. *See, e.g., Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995); *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). "Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." *Boughton,* 65 F.3d at 829; *M & R Amusements Corp. v. Blair,* 142 F.R.D. 304, 305 (N.D. Ill. 1992) ("Deposing an opponent's attorney is a drastic

13

measure. It not only creates a side-show and diverts attention from the merits of the case, its use also has a strong potential for abuse. Thus, a motion to depose an opponent's attorney is viewed with a jaundiced eye and is infrequently proper.").

Under the *Shelton* standard, discovery from opposing counsel is limited to situations where the party seeking the discovery has shown that: (1) no other means exist to obtain the information than to discovery it from opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. The Defendants have made no such showing and in fact have demonstrated that by their descriptions of the communications they seek that the only purpose of the discovery is to intrude upon the mental impressions, conclusions, opinions, or legal theories of Trustee Counsel.

## CONCLUSION

The Trustee, Trustee Counsel, and Donna Raine have made available to the Defendants all of the documents in their possession that are discoverable under Rule 7026. The Court should summarily deny the Motion, because it is specifically directed to obtain the production of privileged communications and work product and otherwise beyond the scope of permissible discovery.

Dated: May 6, 2019

ANDREW J. MAXWELL, TRUSTEE,
BAUCH & MICHAELS, LLC, AND DONNA
RAINE

/s/ Paul M. Bauch
One of the Trustee's attorneys

Paul M. Bauch (ARDC #6196619)
Carolina Y. Sales (ARDC #6287277)
BAUCH & MICHAELS, LLC D/B/A
LAKELAW
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel.: (312) 588-5000
Fax: (312) 427-5709
pbauch@lakelaw.com