IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS — EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 14-41230 |
| HORIZON GROUP MANAGEMENT, LLC, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ANDREW J. MAXWELL, trustee for the ) | |
| estate of Horizon Group Management, LLC, ) | |
| ) | Hon. Timothy A. Barnes |
| Plaintiff, ) | |
| v. ) | Adv. Proc. No. 16-00394 |
| ) | |
| DANIEL MICHAEL, et al; ) | |
| ) | |
| Defendants. ) | |

## NOTICE OF MOTION

To:   Attached service list

PLEASE TAKE NOTICE that on November 9, 2022, at 10:00 a.m., I will appear before the Honorable Timothy A. Barnes, or any judge sitting in that judge's place, and present the *Trustee's Motion for Partial Summary Judgment* a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video,** use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone,** call Zoom for Government at 1-669-254-5252 or 1-646-828- 7666. Then enter the meeting ID and passcode.

**Meeting ID and password.** The meeting ID for this hearing is **161 329 5276** and the password is **433658**. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

        Andrew J. Maxwell, Trustee

        By: /s/ Paul M. Bauch
        One of his attorneys

Paul M. Bauch (ARDC #6196619)
Anthony J. O'Neill (ARDC#6295313)
Carolina Y. Sales (ARDC #6287277)
Bauch & Michaels, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel.: (312) 588-5000
Fax: (312) 427-5709
pbauch@bmlawllc.com
aoneill@bmlawllc.com
csales@bmlawllc.com

## CERTIFICATE OF SERVICE

    I, Paul M. Bauch, certify that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on September 1, 2022, at 5:35 PM.

        /s/ Paul M. Bauch

## SERVICE LIST

**Via CM/ECF to**:

David J. Gold on behalf of 3rd Pty Defendant Daniel Michael
dgold@perkinscoie.com, jmatamoros@perkinscoie.com,ecf2,
f3d8ba2b0968@ecf.pacerpro.com,rleibowitz@perkinscoie.com

Steve Jakubowski on behalf of Attorney Robbins, Salomon & Patt, Ltd.
sjakubowski@rsplaw.com

Edward T Joyce on behalf of Interested Party The Law Offices of Edward T. Joyce & Associates, P.C.
ejoyce@joycelaw.com, mccarey@joycelaw.com; kcallahan@joycelaw.com; jdoherty@joycelaw.com

Jade R Lambert on behalf of Defendant Daniel Michael Living Trust u/t/a/d March 4, 1998
jlambert@perkinscoie.com

2

Jeffrey Sobek on behalf of Interested Party The Law Offices of Edward T. Joyce & Associates, P.C.
jeffs@jsslawoffices.com

Daniel A Zazove on behalf of Defendant Daniel Michael Living Trust u/t/a/d March 4, 1998, et al.
docketchi@perkinscoie.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS — EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 14-41230 |
| HORIZON GROUP MANAGEMENT, LLC, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ANDREW J. MAXWELL, trustee for the ) | |
| estate of Horizon Group Management, LLC, ) | |
| ) | Hon. Timothy A. Barnes |
| Plaintiff, ) | |
| v. ) | Adv. Proc. No. 16-00394 |
| ) | |
| DANIEL MICHAEL; et al; ) | |
| ) | |
| Defendants. ) | |

**TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Andrew J. Maxwell (the "Trustee"), as Chapter 7 trustee for the estate of Horizon Group Management, LLC (the "Debtor"), pursuant to Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Bankr. P. 7056, hereby moves this Court for entry of an order of summary judgment making partial findings against Daniel Michael; Daniel Michael Living Trust u/t/a/d March 4, 1998; Martha Michael; Jeffrey Michael; Horizon Group I, LLC; Horizon Group II, LLC; Horizon Group III, LLC; Horizon Group IV, LLC; Horizon Group V, LLC; Horizon Group VI, LLC; Horizon Group VII, LLC; Horizon Group VIII, LLC; Horizon Group IX, LLC; Horizon Group X, LLC Horizon Group XI, LLC; Horizon Group XV, LLC; Horizon Group XVI, LLC; Horizon Group XVII, LLC; Horizon Group XVIII, LLC; Horizon Group XIX, LLC; Horizon Group XX, LLC; Horizon Group XXI, LLC Horizon Group XXII, LLC Horizon Group XXIII, LLC Horizon Group XXIV, LLC Horizon Group Realty Holdings, LLC (collectively, the "Defendants"):

## INTRODUCTION

The Court should enter summary judgment and a partial finding that the Debtor's management agreements had little or no value to third-party purchasers during the four years preceding the filing of the Debtor's bankruptcy case. The Defendants participated in the prior proceeding and therefore are in privity with the Debtor and are bound by res judicata, collateral estoppel, and judicial estoppel to the Court's prior finding that the Debtor's management agreements had little or no value to third-party purchasers. The Court cannot permit the Defendants to mount a collateral attack on factual findings that they specifically sought in an earlier contested matter in this case.[1]

## BACKGROUND

The Debtor operated as managing agent of the Horizon Group Companies apartment buildings. SUF at 2, 5, 9, 34, and 42. Daniel Michael ("Daniel") was the Debtor's manager, and his trust was the Debtor's only member. Statement of

---

[1]  Privity is a descriptive term for designating those with a sufficiently close identity of interests. *In the Matter of L & S Industries, Inc.*, 989 F.2d 929, 932-33 (7th Cir. 1993). Privity requires a functional analysis concerned with assuring each litigant his or her own day in court. *Tice v. Am. Airlines*, 162 F.3d 966, 971 (7th Cir. 1998). The appropriateness of preclusion turns on how closely the two sets of interests coincide and the role the absentees played in the prior litigation. *Tice,* 162 F.3d at 973. At a minimum, the issues on which preclusion is sought must be common to both cases, and the claims or defenses of the two allegedly equivalent parties must be the same. *Id.* Non-parties may be adequately represented in litigation and bound by a judgment, *Richards v. Jefferson County*, 517 U.S. 793, 798, 116 S. Ct. 1761, 135 L. Ed. 2d 76 (1996), such as where the non-party controlled the earlier litigation or where there is a privity relationship. *Nat'l Spiritual Assembly of Bahá'ís of the U.S. Under the Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Bahá'ís of the U.S., Inc.*, 628 F.3d 837, 849 (7th Cir. 2010) (In the preclusion context, privity has come to be seen as a descriptive term for designating those with a sufficiently close identity of interests.); *see also Oneida Nation v. Vill. of Hobart*, 968 F.3d 664, 688 (7th Cir. 2020); *Obi v. P & B All-Star Constr., Inc.*, No. 11 C 3980, 2011 U.S. Dist. LEXIS 105700 (N.D. Ill. Sep. 19, 2011). A persons that exercised substantial control over the party in prior litigation is in privity. *Martin v. Akerson*, No. 08 C 3812, 2009 U.S. Dist. LEXIS 78445 (N.D. Ill. Aug. 31, 2009). The Defendants were in privity with the Debtor with respect to the bankruptcy case. SUF at 2-41

Undisputed Facts (hereinafter "SUF") at 6, 7, and 41. Daniels' son Jeffrey Michael ("Jeffrey") was the Debtor's "COO" and general counsel. SUF at 10-12. Daniel was the manager of Horizon Realty Holdings, LLC. SUF at 35 and 36. Horizon Realty Holdings, LLC was the manager and member of the Horizon Group Companies, the entities that owned the real estate that the debtor managed. SUF at 37-40. The Debtor's management agreements with the Horizon Group Companies provided for it to make no profit and were terminable on short notice. SUF at 44-50. The management agreements' basic compensation provisions were not amended during the four-year period preceding the filing of the bankruptcy. SUF at 44-50. The Debtor's other assets were of nominal value and did not materially change during the four-years preceding the filing of the bankruptcy case.[2]

On November 14, 2014, the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code. [Bankr. ECF No. 1] During the Chapter 11 phase of the case, Daniel and Jeffrey controlled the Debtor. SUF at 52. Daniel and Jeffrey did not seek to have the Debtor amend its management agreements with the Horizon Group Companies at any time during the bankruptcy case. SUF at 44-50. The Horizon Group Companies never agreed to pay the Debtor a market rate fee under any amended management agreement. SUF at 44-50. On February 27, 2015, the Debtor filed the

---

[2] The Debtor does not own any real estate. Its personal property is primarily comprised of two vehicles, office equipment and furniture. In the Debtor's Schedule B, the Debtor estimated the value of its two pickup trucks to total $31,200 and utilized the depreciated book value of its office furniture and equipment to calculate an estimated value of $29,736.86. The Debtor believes that the actual net realizable value of its office furniture and equipment is less than the depreciated book value.

Bankr. ECF No. 49 at 5, ¶ 8.]

3

Motion to Authorize Sale of the Debtor's assets [Bankr. ECF No. 49] (the "Sale Motion"); SUF at 53. In the Sale Motion, the Debtor represented that the insider's offer to purchase all the Debtor's assets represented a premium over what any third-party purchaser would pay for the assets.[3] *Id*. The Debtor also represented specifically that its management agreements with the Horizon Group Companies had no value to third parties. [Bankr. ECF No. 49 at 5-6 ¶ 9].[4] The Debtor repeated these representations at the hearings on the Sale Motion. March 18, 2015 Hearing Transcript, at 4-5. At no time did the Debtor offer to amend the management agreement so that the Debtor might achieve a higher value for its assets. The Debtor also represented that the value being realized at the sale was a "going concern"

---

[3] The Debtor has determined that the Sale pursuant to the terms of the Purchase Agreement provides its estate with a premium of at least 25% over the value that a sale of the Assets to any other purchaser would produce. Such a premium is only possible with the Buyer, because it is a new entity established by the Debtor's Chief Operating Officer, Jeffrey Michael, who is willing to pay a higher purchase price than could otherwise be obtained for the Assets in order to preserve the Debtor's business operations and the jobs of its 91 employees. The only other viable alternative appears to be a piecemeal liquidation of the Assets to one or more third parties at a substantial discount. The Debtor's sole Manager, Daniel Michael, has accordingly concluded that the Sale of the Assets pursuant to the terms of the Purchase Agreement is in the best interest of the Debtor's estate and its creditors.

[Bankr. ECF No. 49 at 5-6, ¶ 9.]

[4] The Debtor's management agreements with various property owners do not have much, if any, value because they are terminable on 60 days' notice by either party, without cause. In light of its vast experience as a property manager, the Debtor has concluded that there is no market for, or value to, the management contracts, because the counterparties can terminate them at will. Notwithstanding the 60 days' notice requirement, such termination could be exercised and effective even before any possible third-party purchase could be ready to close. The going concern market for such contracts is therefore extremely narrow, and very likely limited to the Buyer.

[Bankr. ECF No. 49 at 5-6, ¶ 9.]

4

value.[5] On April 2, 2015, the Court accepted these proffers and entered specific findings that the management agreements had little or no value to third-party purchasers in its order authorizing the sale (the "Sale Order") [Bankr. ECF No. 64, ¶ G] ("Given the counterparties ability to terminate the management contract at will upon 60 days' notice, the market for such contracts is extremely limited and they have little or no value to any potential third-party purchasers."); SUF at 54 There was no substantial change in the management agreements during the 4 years preceding the filing of the bankruptcy petition. SUF at 44-50.

## ARGUMENT

### STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment was considered and fully set forth in the Court's prior opinion in a related adversary proceeding in this case. *Maxwell v. United States (In re Horizon Grp. Mgmt., LLC)*, 617 B.R. 581, 589-91 (Bankr. N.D. Ill. 2020). There is no genuine dispute as to the Court's determination of the fair value of the Debtor's assets and the management agreements in the Sale Order, and that there was no material change in the management agreements during the four years preceding the filing of the bankruptcy petition. Therefore, the Court should enter summary judgment that the Debtor's management agreements had little or no value

---

[5] The Debtor believes that it has achieved maximum value for the Assets through a going concern sale pursuant to the terms set forth in the Purchase Agreement, because of the property owners' ability to terminate the management contracts on 60 days' notice without cause and the greater than 25% premium that the Buyer has agreed to pay for the Assets. There is no known going concern market for the Assets, and the liquidation value is substantially less than the amount the Buyer is willing to pay.
[Bankr. ECF No. 49 at 9, ¶21.]

5

during the four years preceding the filing of the bankruptcy petition and preclude all collateral attacks on this prior finding by the Defendants.

### THE PARTIES ARE BOUND BY THE COURT'S DETERMINATION THAT THE MANAGEMENT AGREEMENT HAD NO VALUE.

The parties are bound by the Court's finding that the Debtor's management agreements had little or no value, thereby precluding any further contest of the fair value of the Debtor's management agreements. The Court's valuation findings in connection with the sale motion are binding on all parties in interest in the case. *In re Met-L-Wood Corp.*, 861 F.2d 1012 (7th Cir. 1988); *Strong-Davis v. United Rd. Towing, Inc.*, No. 18-cv-02426, 2020 U.S. Dist. LEXIS 180573 (N.D. Ill. Sep. 30, 2020); *In re Zoll*, No. 10 B 2748, 2012 Bankr. LEXIS 342 (Bankr. N.D. Ill. Feb. 1, 2012). Collateral estoppel bars litigation of an issue of law or fact where the issue was actually litigated and decided in a prior action. *La Preferida,* 914 F.2d 900, 905 n.7 (7th Cir. 1990). Collateral estoppel precludes contest of an issue where: (1) the issue sought to be precluded is the same as that invoked in the prior action, (2) the issue was actually litigated, (3) the determination of the issue was essential to the final judgment, and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Id.* at 906*; see also In re J.S. II, L.L.C.*, 389 B.R. 570, 587 (Bankr. N.D. Ill. 2008).

The fair value of the management agreements is the same issue presented to the Court on the Sale Motion as in this Adversary; the fair value of the management agreements was actually litigated; the Court's determination of the fair value of the management agreements was essential to the Sale Order; and the Defendants were

6

fully represented and in fact were the advocates for the valuation of the management agreements in the prior action. The Court's Sale Order precludes the Defendants attempt to collaterally attack the Court's findings in this adversary proceeding. *Wash. Grp. Int'l, Inc. v. Bell, Boyd & Lloyd, LLC*, 383 F.3d 633 (7th Cir. 2004); *see also Fulmer v. Fifth Third Equip. Fin. Co. (In re Veg Liquidation, Inc.)*, 931 F.3d 730 (8th Cir. 2019). Since the terms of the compensation and reimbursement provisions and the "at will" termination provision of the management agreements were unchanged during the four years preceding the bankruptcy, the Court's finding that the management agreements had no value is binding in this action with respect to the financial condition of the Debtor during the four years preceding the bankruptcy filing.

In addition, the Defendants are judicially estopped to assert a position contrary to their prior position that the Debtor's management agreements had no value. "Judicial estoppel is a doctrine intended to prevent perversion of the judicial process." *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990). It applies to prevent a party that has taken one position in an earlier legal proceeding from maintaining a position inconsistent with the prior position in a subsequent legal proceeding. *Id*. "The principle is that if you prevail in Suit # 1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events." … "To invoke judicial estoppel, a court must identify three elements: (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt

7

its position." *Cooper v. Eagle River Memorial Hosp., Inc.*, 270 F.3d 456, 462-63 (7th Cir. 2001); *Charitable DAF Fund, L.P. v. Highland Capital Mgmt. L.P. (In re Highland Capital Mgmt. L.P.)*, Nos. 19-34054-SGJ-11, 21-03067, 2022 Bankr. LEXIS 659 (Bankr. N.D. Tex. Mar. 11, 2022); *Shoup v. Gore*, 2014 IL App (4th) 130911, 383 Ill. Dec. 179, 14 N.E.3d 11.; *Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453, 277 Ill. Dec. 111, 795 N.E.2d 779 (2003).

In this case, when the Defendants sought to justify their insider sale of the Debtor's assets, they explicitly represented to the Court that the Debtor's management agreements were of little or no value. Having succeeded with this position, they cannot now contradict such position by asserting that the management agreements had a hypothetical value more than the value that the Court found in authorizing the sale. All of the judicial estoppel elements are met. The positions are clearly inconsistent. The facts at issue are identical. The Defendants persuaded the Court to adopt their position in the contested matter involving the approval of the sale. The Court should apply judicial estoppel to bar the Defendants from advancing an inconsistent position. *McCoy v. Schuster Co.*, No. 1:20-cv-04261, 2021 U.S. Dist. LEXIS 254285 (N.D. Ill. Mar. 24, 2021).

WHEREFORE, the Trustee prays that the Court enter an Order:

1. Granting summary judgment and entering partial findings that the Debtor's management agreements had little or no value during the four-year period preceding the filing of the bankruptcy case;

    2.    Precluding the Defendants from challenging the valuations of the Debtor's management agreements in this adversary proceeding by either expert or lay testimony; and,

    3.    Providing such other relief as is appropriate.

Dated: September 1, 2022                          ANDREW J. MAXWELL, TRUSTEE

                                            /s/ Paul M. Bauch
                                                One of his attorneys

Paul M. Bauch (ARDC #6196619)
Anthony J. O'Neill (ARDC#6295313)
Carolina Y. Sales (ARDC #6287277)
Bauch & Michaels, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel.: (312) 588-5000
Fax: (312) 427-5709
pbauch@bmlawllc.com
aoneill@bmlawllc.com
csales@bmlawllc.com