## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re<br>Horizon Group Management, LLC,<br>                                   Debtor. | Chapter 7<br><br>Case No. 14-41230 |
| Andrew J. Maxwell, trustee,<br>                                   Plaintiff,<br><br>v.<br><br>Daniel Michael, *et al.*,<br>                                   Defendants. | Hon. Timothy A. Barnes<br><br>Adv. Proc. No. 16-00394 |

## MEMORANDUM IN SUPPORT OF THE MICHAEL DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The Michael Defendants,[1] by their undersigned counsel, pursuant to Fed. R. Bankr. P. 7056 and L. R. 7056-1, submit this memorandum in support of their Motion for Partial Summary Judgment, and state as follows:

### INTRODUCTION

In most cases, the debtor plods on a long slow march to insolvency with many missteps along the road to the bankruptcy court. Here however, the Debtor's financial difficulties were occasioned by a singular event: the unconscionable award of more than $800,000 of fees and costs to Class Counsel who recovered less than $40,000 for their clients.

In June 2009, a Horizon Property Owner's tenant, Amanda Bonnen, filed a complaint in the Cook County Circuit Court erroneously alleging that the Debtor failed to pay *any* interest on her $250 security deposit and seeking certification as a class action. More than two years later, on October 25, 2011, Bonnen filed her Second Amended Complaint now alleging that the Debtor

---

[1] The Michael Defendants consist of Daniel Michael ("Daniel"), the Daniel Michael Living Trust u/t/a/d Match 4, 1998 (the "Michael Trust"), Martha Michael ("Martha"), Jeffrey Michael ("Jeffrey"), Horizon Group Realty Holdings, LLC ("Horizon Holdings"), and each of the Horizon Group I - XI and XV - XXIV (the "Horizon Property Owners").

*underpaid* interest on her $250 security deposit by $1.05 in 2007 and by $2.50 in 2008. Eventually, in November 2013, Bonnen and the Debtor settled the Class Action Case by a written agreement, approved by the Circuit Court, that unconditionally released the Michael Defendants and established a small fund of $40,000 for payment of qualified class claims. However, on August 27, 2014, when the Circuit Court unexpectedly awarded Class Counsel more than $833,000 of fees and costs, and in the face of Class Counsel's judgment collection efforts, the Debtor was obliged to file a chapter 11 bankruptcy case to maintain its property management business so it could continue to serve its 2,000 tenants and preserve the jobs of its employees.

Although the Trustee attempts to portray the Debtor's owners as scheming to bankrupt the Debtor as far back as 2009, that fairy tale is not supported by any of the facts adduced in discovery. Rather, the evidence establishes that the Debtor ran a fully operational and expanding business, timely paid all its creditors from 2009—the year that the Bonnen litigation was filed—through the Debtor's petition date of November 14, 2014, as acknowledged by the Trustee's proposed expert witness. The Debtor's sworn schedules include only five unpaid general unsecured claims totaling approximately $883,000, 94% of which are the unpaid fees of Class Counsel, awarded only months before the petition date. Similarly, the bankruptcy claims register includes only two relevant pre-petition claims for obligations incurred shortly before the Debtor's bankruptcy that total $28,806. Indeed, the Trustee's Third Amended Complaint affirmatively states that the Debtor's revenues increased every year from 2010 to 2014, and that the Debtor reported profits for the years leading up to its bankruptcy filing—2010, 2011, 2012, and 2013.[2]

This adversary proceeding is an abuse of the bankruptcy system by Class Counsel who drove the Debtor into bankruptcy and who now regret waiving their claims and releasing the

---

[2] 3rd Am. Compl. ¶ 78.

Michael Defendants as they frankly acknowledge in their motion to dismiss the Debtor's bankruptcy case.[3] Rather than establishing the elements of any cause of action, the Trustee, now represented by the attorney for Class Counsel, has engaged in a years-long dishonest effort to tar and defame the Michael Defendants as having run a fraudulent business enterprise, leveraging the burden of litigation to extract settlements from third parties along the way. In the process, the Trustee has depleted estate assets, taking 20 depositions and engaging in duplicative and voluminous written discovery, none of which support the Trustee's slanderous allegations against the Michael Defendants.

While some of the Trustee's remaining claims may hinge on disputes of material fact regarding the Debtor's solvency after August 27, 2014—when compensation was awarded to Class Counsel—or the equivalence of value exchanged for allegedly fraudulent transfers, the Court should enter summary judgment in favor of the Michael Defendants on Counts I, III, X, XX and XVI of the Trustee's Third Amended Complaint.

## **FACTUAL BACKGROUND**

Horizon Group Management, LLC (the "Debtor") was a real-estate management company that by 2014 was responsible for 24 separate properties containing almost 2,000 residential and 41 commercial units, which combined generated revenue of more than $27 million. In January 2004, the Debtor and the Horizon Property Owners entered into the first of a series of management agreements. The provisions of the Management Agreement relevant to the Michael Defendants' Motion for Partial Summary Judgment have been renumbered, but not materially amended.[4] Under the Management Agreements, each of the Horizon Property Owners were required to pay

---

[3] *See* Bankruptcy Case, Docket No. 55.
[4] References to particular sections of the Management Agreement in this memorandum shall be to the 2011 amended management agreement.

the costs, expenses, and fees for the operation and management of their specific property. *See* Facts at ¶ 10.

### The Class Action

On June 24, 2009, Amanda Bonnen, a tenant of Horizon Group X, LLC, located at 4242 N. Sheridan Road, filed a lawsuit seeking class certification against the Debtor in the Circuit Court of Cook County, Case No. 2009 CH 20365, alleging a violation of the City of Chicago landlord-tenant ordinance (the "RLTO") and claiming that the Debtor failed to pay her *any* interest on her $250 tenant security deposit (the "Class Action"). *See* Facts at ¶ 11. Bonnen was represented by two law firms: The Law Offices of Jeffrey S. Sobek, P.C. and by Edward T. Joyce & Associates, P.C. (together, "Class Counsel"). *See* Facts at ¶ 13. After two amendments to the Class Action complaint, on April 12, 2013, the Circuit Court granted Bonnen's motion to certify two classes; the first for *miscalculation* of interest on tenant security deposits and the second for failure to provide tenants with the required porch notice. *See* Facts at ¶ 14.

### The Settlement Agreement

In November 2013, the Debtor and Bonnen executed a Settlement Agreement that fully and unconditionally resolved the Class Action case and established a process for claims administration with each qualified underpaid tenant to receive an amount equal to its security deposit, and $50 for each lease that failed to include the correct porch notice (the "Settlement Agreement").[5] *See* Settlement Agreement, Ex. D to Facts, at ¶ 2(g). The Debtor agreed to pay all valid class claims, a $5,000 incentive award to Bonnen, and the fees and costs awarded by the Circuit Court to Class Counsel without appeal in exchange for a release. *See* Settlement Agreement, Ex. D to Facts, at ¶ 2(g). An independent claims agent was retained to give notice to

---

[5] A copy of the Settlement Agreement is attached to the Facts as Exhibit D.

class members and to qualify and pay valid claims. *See* Settlement Agreement, Ex. D to Facts, at ¶ 2(g). Although 141 Class Claims were filed, for various reasons the Debtor contested the validity of 58 claims totaling $34,625. *See* Facts at ¶ 30; Claims Register, Claim No. 11.

The valid class claims as determined by the claims agent were not the $900,000 allegedly anticipated by Class Counsel, but less than $40,000. The claims agent promptly paid 83 class claimants a total $36,154.80 but rejected the class claims disputed by the Debtor. *See* Facts at ¶ 22. Without any objection from Class Counsel, the claims agent thereafter remitted a refund of the excess deposit in the amount of $1,930 to the Debtor. *See* Facts at ¶ 22. Although Section 2(g)(vii) of the Settlement Agreement provided a mechanism for Class Counsel to bring the disputed claims to the Circuit Court for resolution, they never did, and pursuant to the Settlement Agreement, the Class Action was dismissed with prejudice in March 2014 with all claims, including the disputed claims, discharged. *See* Approval Order, Ex. E to Facts at ¶ 7.

Under the Settlement Agreement, all Horizon-related entities and their affiliates, including the Michael Defendants in this adversary proceeding, were explicitly and unconditionally released from all claims alleged in the Class Action or arising from the administration of the Settlement Agreement. *See* Facts at ¶ 18. Notably, the release, found in Paragraph 4 of the Settlement Agreement (the "Release"), states as follows:

> [U]pon entry of the Final Order and Dismissal in the Litigation, Plaintiff and each and every Class Member shall be bound by this Agreement and shall have recourse exclusively to the benefits, rights and remedies provided hereunder. Each and every Class Member shall be deemed to have, and by operation of the Final Order and Dismissal shall have, fully, finally and forever released, relinquished and discharged each and all of the Released Parties from any and all claims alleged in this Litigation or arising from the administration of this settlement.

*See* Settlement Agreement, Ex. D to Facts, at ¶ 4(a). The "Released Parties" are defined in the Settlement Agreement as Horizon Group Management, LLC (a/k/a Horizon Realty Group),

Horizon Realty Group, LLC, a misnomer for Horizon Group Management, LLC, a/k/a Horizon

Realty Group, Horizon Group Realty Holdings, LLC, and any other name under which Horizon

Group Management, LLC operates, and any affiliates, owners, officers, parents or subsidiaries

thereof. *See* Settlement Agreement, Ex. D to Facts, at ¶¶ 1(b), 1(o).

### Court Approval of the Settlement Agreement

Any lingering doubt about the interpretation of the Settlement Agreement is confirmed by

the Circuit Court's final order and judgment approving the Settlement Agreement (the "Approval

Order")[6] entered on March 13, 2014, which contains, among other things, the following relevant

provisions:

- The court dismisses the Lawsuit (including all individual and class claims presented thereby) on the merits as to Defendant with prejudice and without fees or costs except as provided herein.  Approval Order, Ex. E to Facts, at ¶ 7.

- The court adjudges that Plaintiff and the Settlement Class have conclusively compromised, settled, discharged, dismissed, and released any and all claims alleged in the Litigation. pursuant to Section 4 of the Settlement Agreement. Approval Order, Ex. E to Facts, at ¶ 8.

- Upon the Effective Date [March 13, 2014], Plaintiff and all members of the Settlement Class who have not been excluded from the Settlement Class [there were none], whether or not they return a Claim Form within the time and in the manner provided, shall be barred from asserting any Released Claims against Defendant, and any such members of the Settlement Class shall have released any and all Released Claims as against Defendant.  Approval Order, Ex. E to Facts, at ¶ 12.

- The court bars and enjoins all members of the Settlement Class who have not been excluded from the Settlement Class from (i) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to, or arising out of the claims and causes of action, or the facts and circumstances relating thereto, in this Lawsuit and/or the Released Claims up to the date of the Preliminary Approval Order [insert date], and (ii) organizing members of the Settlement Class who have not been excluded from the class into a separate class for purposes of pursuing as a

---

[6] A copy of the Approval Order is attached to the Facts as Exhibit E.

purported class action any lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on, relating to, or arising out of the claims and causes of action, or the facts and circumstances relating thereto, in the Lawsuit and/or the Released Claims. Approval Order, Ex. E to Facts, at ¶ 14.

### *Class Counsel's Fee Award*

On January 16, 2014, Class Counsel filed petitions seeking an award of $871,592.20 in attorneys' fees and expenses. *See* Facts at ¶ 24. Although the Debtor's counsel contested the fees and suggested an appropriate award would be $185,000, nevertheless the Circuit Court awarded fees and costs of $833,455.32—more than 20 times the amount paid to all class claimants. *See* Facts at ¶ 25. The Debtor and Class Counsel then entered a standstill agreement while attempts were made to resolve the fee dispute.

### *The Bankruptcy Case*

However, when Class Counsel unilaterally terminated settlement discussions and proceeded to enforce the fee award, the Debtor filed its bankruptcy case on November 14, 2014 to protect its business, its employees, and its tenants. *See* Facts at ¶ 26. Excluding Class Counsels' unpaid fees and costs and the two insider claims, the Debtor's sworn Schedule of general unsecured claims (Schedule "F") includes only five claims totaling $9,689.88. *See* Facts at ¶ 28.

Similarly, other than Class Counsel's fee award, an inappropriately filed proof of claim for the 58 discharged class claims (described in more detail below), claims filed by a Michael Defendant, two 502(h) claims, and two contingent post-petition IRS claims, there are only two proofs of claim filed totaling $28,806. *See* Facts at ¶ 29.

### *The False Proof of Discharged Claims*

In an attempt to falsely posit the existence of creditors whose unpaid claims arose beyond the reach-back limitation of Section 548, Class Counsel, at enormous personal risk, filed a sworn

proof of claim (#11) for the disputed class claims explicitly disallowed and discharged by the Settlement Agreement and the Approval Order. *See* Facts at ¶ 30. Further, the Approval Order enjoined any person from pursing these discharged class claims in any other forum. *See* Approval Order, Ex. E to Facts, at ¶ 14.

After a sale of the Debtor's assets under Section 363 of the Bankruptcy Code, the bankruptcy case was converted to a case under Chapter 7. *See* Bankruptcy Case Docket No 82. Andrew Maxwell, the Chapter 7 trustee (the "Trustee"), retained Bauch & Michaels as his special counsel to pursue avoidance actions against the Michael Defendants and the Debtor's transferees. Bankruptcy Case Docket No.105. Bauch & Michaels had previously represented Class Counsel in this bankruptcy case. *See* Facts at ¶ 35.

### *The Trustee's Adversary Complaint*

On July 1, 2016, following substantial Rule 2004 discovery, the Trustee's special counsel filed a 121-page, 441-paragraph complaint to avoid and recover more than $2.7 million of transfers made by the Debtor to 19 defendants between the dates of November 16, 2010 and November 10, 2014. *See generally* Docket No. 1. The 21 counts for relief alleged: breach of fiduciary duty, equitable contribution, breach of the Debtor's management agreement, breach of the Debtor's operating agreement, breach of the Illinois Limited Liability Company Act, intentional and constructive fraudulent conveyances under the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act, equitable subordination, veil piercing, alter ego, and claims for sanctions under sections 1927 and 105(a). On July 13, 2016, the Trustee voluntarily amended the Complaint, increasing its length to 144 pages. *See* Dkt. No. 32. The Michael Defendants moved to dismiss certain counts of the Amended Complaint, Dkt. No. 43, and the Court granted parts and denied parts of the Michael Defendants' motion to dismiss with leave to replead. *See* Dkt. No. 56.

8

On March 27, 2017, the Trustee filed a Second Amended Complaint. *See* Dkt. No. 57. Again, the Michael Defendants moved to dismiss some of the counts of the Second Amended Complaint, Dkt. No. 63, and again, the Court both granted and denied parts of the motion to dismiss with leave to replead. *See* Dkt. No. 76.

On August 22, 2017, the Trustee filed a Third Amended Complaint, which runs to 140 pages, contains 435 allegations, and still seeks to avoid and recover $2,755,986 of transfers made as far back as November 16, 2010. *See* Dkt. No. 78. Unsurprisingly, the Michael Defendants moved to dismiss some counts of the Third Amended Complaint, and the Court granted and denied that motion in part. *See* Dkt. Nos. 81, 93.

In summary, the Court has dismissed the following counts:

- Counts II (equitable contribution),

- XI (avoidance of post-petition transfers),

- XVII (breach of fiduciary duty by Jeffrey Michael),

- XVIII (breach of fiduciary duty by Daniel Michael), and

- XXI (sanctions for violation of 1927 and 105(a)), and the Trustee's fraudulent transfer counts seeking to disgorge $660,078.31[7] of Jeffrey's 2013 and 2014 salaries.

The Trustee's remaining counts include claims for the following:

- Breach of the Debtor's property management agreement (Count I),

- breach of the Debtor's operating agreement (Counts III & IV),

- violation of the Illinois Limited Liability Company Act (Count V),

---

[7] The Trustee's surviving fraudulent transfer claims relating to Jeffrey's salary seek to disgorge $549,234.02 in transfers to Jeffrey – the amount by which Jeffrey's salary in 2013 and 2014 exceeded his 2012 salary.

- intentional and constructive fraudulent conveyances under Section 548 of the
  Bankruptcy Code from November 2012 through the Petition Date (Counts VI, VII,
  XII, & XIII),

- intentional and constructive fraudulent conveyances under the Illinois Uniform
  Fraudulent Transfer Act from December 7, 2010 through the Petition Date (Counts
  VIII, IX, X, XIV, XV, & XVI),

- equitable subordination (Count XIX), and

- veil piercing and alter ego claims (Count XX).

By this Motion, the Michael Defendants seek partial summary judgment and respectfully request that this Court enter summary judgment on Counts I, III, X, XVI, and XX of the Third Amended Complaint.

## **LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, affidavits and materials on file demonstrate that there is no genuine issue of material fact such that movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). Courts review the record in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor in ruling on summary judgment. *See id.* A genuine issue of material fact exists "only if there is sufficient evidence favoring the non-moving party for the jury to return a verdict for that party." *Alexander v. Wis. Dept. of Health & Family Serv.*, 263 F.3d 673, 680 (7th Cir. 2001) (*quoting Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999)).

Once the moving party has satisfied its burden to show "an absence of evidence to support the nonmoving party's case," the non-moving party must respond with "specific facts showing that

there is a genuine issue for trial." *Celotex*, 477 U.S. at 324-25.  Conclusory allegations by the non-moving party cannot defeat a motion for summary judgment.  *See Bridgeman v. New Trier High Sch. Dist. No. 203*, 128 F.3d 1146, 1148 (7th Cir. 1997).  If the non-moving party fails to present evidence that is "significantly probative" or more than "merely colorable" on an essential element of the claim on which that party has the burden of proof, then the movant is entitled to judgment as a matter of law.  *Riad v. 520 S. Mich. Ave. Assocs.*, 78 F. Supp. 2d 748, 757 (N.D. Ill. 1999) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

If the court finds that summary judgment is not appropriate as to the entire action, the court should determine which material facts are not genuinely at issue and issue an order treating such facts as established.  Fed. R. Civ. P. 56(d).

## **ARGUMENT**

### A. **Breach of the Management Agreement (Count I)**

In Count I, the Trustee alleges that the Horizon Property Owners breached one of the unspecified Management Agreements with the Debtor by failing to advance funds to pay several claims that he argues they were obliged to pay.  *See* 3rd Am. Compl. ¶ 311.  Some of these claims were included multiple times to make it appear as if there are more liabilities than actually exist. More importantly, by far the largest of these claims are Class Counsel's fee awards and the contested class claims that were discharged by the Settlement Agreement. *See* 3rd Am. Compl. ¶ 311 (citing Claim Nos. 3, 11, and 12).

The Third Amended Complaint makes an unidentifiable leap of logic to presume that the Horizon Property Owners are liable for these obligations without basis in fact or law.  The Trustee provides no statutory or contractual basis for this argument, and glibly ignores the express language of the Management Agreements.

1.    **The Trustee cannot recover claims against the Horizon Property Owners under the Management Agreement because they are expressly non-reimbursable**

Based on the four corners and plain language of the Management Agreement, none of the claims listed in Paragraph 311 of the Third Amended Complaint, including Claims 3, 11, and 12, are reimbursable as against the Horizon Property Owners.  Pursuant to Article XI of the Management Agreement, the Horizon Property Owners were required to pay the Debtor certain costs, expenses, and fees connected to the operation and management of the Horizon Property Owners' properties.  Specifically, the Management Agreement states that the Debtor will be paid:

> a fee in an amount equal to such Owner's share of any and all costs, expenses (direct and indirect) and fees incurred by [the Debtor] on behalf of an Owner in connection with and allocable to the operation and management of the Properties owned by the Owner and the operation of [the Debtor] that is not otherwise reimbursed to [the Debtor] as provided in this Agreement . . . which shall include, without limitation, (i) all costs, expenses, and fees, for materials, labor and services rendered, (ii) administrative expenses, labor and overhead costs incurred by [the Debtor] on behalf of [the Horizon Property Owners], and (iii) those expenses incurred by [the Debtor] in relation to its own operations and the operations of each of the Properties owned by the [Horizon Property Owners].

*See* Management Agreement, Ex. C to Facts, Article XI.  On its face, this provision only governs costs, expenses, and fees connected to the operation and management of the Horizon Property Owners' properties.  However, the Management Agreement does *not* obligate the Horizon Property Owners to pay costs associated with Debtor's civil liability for failing to comply with the RLTO or the Debtor's RLTO costs, as they are not "expenses" "incurred by [the Debtor] on behalf of [the Horizon Property Owners] in connection with and allocable to the operation and management of the Properties."

Moreover, the Trustee's claim in Count I ignores a provision of the Management Agreement that specifically addresses situations in which the Debtor's negligence results in

liability. Section 15.2 of the Management Agreement clearly states that the Debtor has <u>no right</u> to be reimbursed for its own negligence in failing to adhere to the RLTO:

> Nothing contained in this Article shall require Owner [i.e. the Horizon Property Owners] to indemnify HGM [i.e. the Debtor] or defend or hold HGM harmless from any claims or actions resulting from acts or omissions which constitute negligence or willful misconduct on the part of HGM or any of HGM's employees or agents . . .

*See* Management Agreement, Ex. C to Facts, Section 15.2. What's more, the Trustee specifically alleges that the Debtor was negligent in failing to pay the appropriate interest on tenant security deposits, which was the basis for the Class Action, for Class Counsel's fee award, and for the Debtor's bankruptcy. *See* 3rd Am. Compl. ¶¶ 90-98. As such, the Third Amended Complaint itself establishes that the Debtor has no contractual basis to compel payments for litigation expenses related to the Class Action from the Horizon Property Owners—this is in direct opposition to what the Trustee seeks in Count I.

If there is a conflict or inconsistency between two contractual provisions, "the more specific provision relating to the same subject matter controls over the more general provision." *Bank of Commerce v. Hoffman*, 829 F.3d, 542, 548 (7th Cir. July 15, 2016). Accordingly, even if the general reimbursement provisions of the Management Agreement *could* relate to the damages that the Trustee seeks (they do not), the Court must nevertheless apply the specific indemnity provision of the Management Agreement (Section 15.2) to the Trustee's claims involving the Debtor's RLTO negligence and deny the Trustee relief in Count I and grant the Michael Defendants summary judgment.

### 2. The Trustee cannot recover any of the other claims against the Horizon Property Owners under the Management Agreement

Aside from Class Action-related liabilities (i.e., Claims 3, 11, and 12), the Trustee also seeks reimbursement from the Horizon Property Owners for the following claims against the

Debtor's estate, none of which are reimbursable under the Management Agreement:

- The U.S. Trustee's post-conversion claim (Claim No. 2) for quarterly fees: This claim was assessed after conversion of the Debtor's case to chapter 7. At conversion, the Debtor had $74,631.30 in cash and could pay the claim, but the Trustee chose to exhaust the estate funds to pay himself and his counsel. *See* Bankr. *See* Dkt. No. 112. The Trustee cannot manufacture a claim against the Horizon Property Owners based on expenses that would have been paid for but for his decision to pay himself and his counsel.

- Goldberg Kohn attorneys' fees claim (Claim No. 6) for negotiating a collective bargaining agreement: The Trustee elsewhere acknowledges that this claim is erroneously asserted against the Debtor and should have been asserted against Horizon Group XXIII, LLC because the legal work was "solely for the benefit of Horizon Group XXIII." 3rd Am. Compl. ¶ 215. Thus, the Trustee cannot seek reimbursement of the claim. His only remedy is to object to the claim.

- Yardi's claims (Claims No. 9 and 10) for the Debtor's use of its property management software: Yardi withdrew these claims on August 16, 2017. *See* Claims Register, Claim Nos. 9, 10.

- The IRS's claims (Claims No. 13 and No. 14) for, among other things, the Debtor's alleged non-payment of some 2013 FICA withholding taxes: The IRS filed both of these claims in error and amended Claim No. 13 to $0.00 on March 28, 2017 and withdrew Claim No. 14 on March 28, 2017. *See* Claims Register, Claim Nos. 13, 14.

Based upon the foregoing, including the undisputed facts and the four corners of the Management Agreement, the Michael Defendants are entitled to summary judgment on Count I.

## B.   Breach of the Operating Agreement (Count III)

In Count III of the Third Amended Complaint, the Trustee alleges that the Michael Trust breached Section 9.02 of the Debtor's Operating Agreement by failing to make capital contributions to pay certain of the Debtor's obligations, chiefly Class Counsel's attorneys' fee award. The Trustee requests that the Court enter a damages award against the Michael Trust in an amount equal to all of the proofs of claim asserted against the Debtor's estate.

The Court should grant the Michael Defendants summary judgment on Count III because the Michael Trust has no such obligation under the Operating Agreement and the Trustee has failed to raise a material issue of disputed fact to deny summary judgment.

Section 9.02 of the Operating Agreement states:

> General Members [i.e. the Michael Trust pursuant to section 4.01] shall be required to make such additional Capital Contributions as shall be determined by a Majority Interest [i.e. the Michael Trust pursuant to section 1.01(v)] from time to time to be reasonably necessary to meet the expenses and obligations of the Company [the Debtor]. After the making of any such determination, the Managers [i.e. Daniel Michael pursuant to Section 5.02] shall give written notice to each General Member of the amount of required additional contribution, and each General Member shall deliver to the Company its pro rata share thereof (in proportion to the respective Percentage Interest of the General Member on the date such notice is given) no later than thirty days following the date such notice is given. None of the terms, covenants, obligations or rights contained in this Section 9.02 is or shall be deemed to be for the benefit of any Person or Entity other than the Members and the Company, and no such third person shall under any circumstances have any right to compel any actions or payments by the Managers and/or the Members.

The Trustee has failed to assert or establish that the Michael Trust determined that any capital contributions were at any time reasonably necessary to meet the Debtor's expenses and obligations—which determination is a condition precedent to any potential obligation of the Michael Trust to the Debtor under Section 9.02. The Trustee has also failed to assert or establish that Daniel Michael gave the Michael Trust written notice of the amount of any required capital contributions—which notice is an additional condition precedent to any potential obligation of the Michael Trust under Section 9.02. "Where a condition precedent is not satisfied, no breach of contract occurs for failure to perform." *Quantum Mgmt. Grp., Ltd. v. Univ. of Chicago Hosps*., 283 F.3d 901, 906 (7th Cir. 2002).

The Trustee nevertheless alleges that these conditions precedent should be excused based on an alleged breach of fiduciary duty, *see* Third Am. Compl. at ¶ 326, but there is no legal support

for that proposition, Count III does not adequately assert an alleged breach of fiduciary duty relating to the conditions precedent, and this Court has dismissed the Trustee's breach of fiduciary duty claims with prejudice in 2017. *See* Third Am. Compl. at ¶ 383-397 [Dismissed counts XVII and XVIII].

The Trustee further asserts that the Court can just "appoint a person" to perform the two conditions precedent under Section 9.02, and thereby post-petition and post hoc create the conditions precedent to establish a pre-petition prima facie breach of fiduciary duty. Third Am. Compl. at ¶ 329. The Trustee has not established any legal basis for his assertion that the Court has such power. Additionally, the Trustee does not plead that the Court "appoint a person" as a prayer for relief, and instead just asserts without authority that the Court has such power and thus Count III does not seek such appointment. Further, even if the Court had such power, the Trustee had properly sought such appointment, the Court made such appointment and the appointee satisfied the conditions precedent under Section 9.02 by making the factual determinations required therein, the Michael Trust would not be obligated to make any capital contributions because the Debtor ceased operating as a going concern on April 1, 2015 when it sold its business in a Section 363 bankruptcy sale. *See* Operating Agreement, Ex. B to Facts, at § 18.02(c) ("Notwithstanding anything to the contrary in this Operating Agreement, upon a liquidation within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations, if any Interest Holder [i.e. the Michael Trust pursuant to Section 1.01(r)] has a Deficit Capital Account [defined as owing a capital contribution in Section 1.01(k)], such Interest Holder shall have no obligation to make any Capital Contribution, and the negative balance of such Interest Holder's Capital Account shall not be considered a debt owed by such Interest Holder to the Company or to any other Person for any purpose whatsoever."); *see also* Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations (". . .

[T]he liquidation of a partnership occurs upon . . . the date upon which the partnership ceases to be a going concern . . . ).”

Finally, the Trustee has no standing to sue the Michael Trust under Section 9.02.  Section 9.02 explicitly states that “None of the terms, covenants, obligations or rights contained in this Section 9.02 is or shall be deemed to be for the benefit of any Person or Entity other than the Members and the Company, and no such third person shall under any circumstances have any right to compel any actions or payments by the Managers and/or the Members.”  The Trustee is not a Member or the Company, and thus he is barred from compelling any actions or payments by the Michael Trust under Section 9.02.

Based upon the foregoing and the undisputed facts, the Michael Defendants are entitled to summary judgment on Count III of the Third Amended Complaint.

## C.     Fraudulent Transfers Under 740 ILCS § 160/6(a) (Counts X and XVI)

In Counts X and XVI, the Trustee seeks to avoid transfers that the Debtor made to or for the benefit of Daniel, Martha, and Jeffrey (the “Alleged Fraudulent Transfers”) that the Trustee argues were constructively fraudulent under the Illinois Uniform Fraudulent Transfer Act (“Illinois UFTA”).[8]  *See* 3rd Am. Compl. ¶¶ 358, 378.  To describe the specific transfers sought to be avoided, the Trustee refers to earlier paragraphs of the Third Amended Complaint and summarizes the transfers on Exhibit 7 of the Third Amended Complaint.  *See* 3rd Am. Compl. ¶ 358 (“On or within four years of the Petition Date, the Debtor made transfers of property as described in paragraphs 4, 6, 58, 63, 69, 72, 76, 77, 80, 84, 85, 225 and 239 of this Complaint, to or for the benefit of Daniel and Martha.”).

---

[8] The Alleged Fraudulent Transfers date as far back as November, 2010, four years pre-petition.

1.     **As of the Petition Date, there were no creditors holding claims that arose before August 17, 2014—date the Class Counsel's fee award was entered— thus, the Trustee cannot seek to recover any transfers that took place before November 14, 2012**

To prevail on Counts X and XVI, in addition to proving each element of 740 ILCS § 160/6(a), the Trustee must demonstrate the existence of an unsecured creditor holding an allowable unsecured claim who could avoid the transfers at issue (*i.e.*, a "golden creditor"). *See e.g., In re Imageset, Inc.,* 299 B.R. 709, 715 (Bankr. D. Me. 2003). The Trustee cannot make this showing, and thus, Counts X and XVI must fail as to any transfers made prior to November 14, 2012—the date two years prior to the petition date.[9]

Pursuant to the Illinois UFTA, specifically Section 160/6(a), which is the Trustee's legal basis for avoiding the Alleged Fraudulent Transfers in Counts X and XVI,

> A transfer or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

740 ILCS § 160/6(a). The Trustee's power to bring actions under the Illinois UFTA is derived from section 544(b) of the Bankruptcy Code, which permits the Trustee to "avoid any transfer of an interest of the debtor in property or any obligations incurred by the debtor that is voidable under applicable law *by a creditor holding an unsecured claim that is allowable . . . .*" 11 U.S.C. § 544(b) (emphasis added). "The Trustee's powers under section 544(b) are conditioned on there being an 'unsecured creditor of the debtor that actually has the requisite nonbankruptcy cause of action.'" *Ebner v. Kaiser (in re Kaiser)*, 525 B.R. 697, 708 (Bankr. N.D. Ill. 2014) (Barnes, J.);

---

[9] Because there is no "golden creditor" present, as described in more detail herein, the applicable statute of limitations arises under Section 548 of the Bankruptcy Code, which only allows for the avoidance of transfers made "2 years before the date of the filing of the petition." 11 U.S.C. § 548(a)(1).

*see also In re Equip. Acquisition Res., Inc.,* 742 F.3d 743, 746 (7th Cir. 2014) ("Section 544(b) is unique in another regard: its terms require the actual existence of an unsecured creditor that could have brought the state-law action itself. 'If there are no creditors against whom the transfer is voidable under the applicable law, the trustee is powerless to act under section 544(b)(1)'.'"). This requirement is sometimes referred to as the "golden creditor rule." *See* 5 Collier on Bankruptcy ¶ 544.06[1] (16th ed.) (explaining that a creditor is a golden creditor if it was a creditor of the debtor on the date of an alleged fraudulent transfer and remained unpaid as of the petition date).

In order to advance the illusion of a "golden creditor," a creditor whose existence is essential to a claim under the Illinois UFTA, one of Bonnen's class action attorneys, attorney Flaxman of the Law Offices of Edward T. Joyce, filed a knowingly false claim in the Debtor's bankruptcy case on August 21, 2015 alleging that the Debtor failed to pay 86 class claims totaling $36,725.27.  *See* Facts at ¶ 30; Claims Register, Claim No. 11.  Of course, these are exactly the claims that the Debtor contested in the class action, and which were <u>unconditionally discharged</u> by the Settlement Agreement and Approval Order.  *See* Facts at ¶¶ 16, 18, 21.

The undisputed facts show that there are no creditors whose existence predates the award of fees and costs to Class Counsel on August 17, 2014.[10]  Specifically, the only two unsecured claims on the docket for purposes of the Trustee's powers under Section 544(b) are claim number 3 of Skadden Arps (8/19/2014 to 3/18/2015) and claim number 6 of Goldberg Kohn (6/10/2014 to 11/14/2014).  *See* Facts at ¶ 29.  Indeed, the Trustee's proposed expert witness acknowledged that "the debtor was paying its day-to-day non-RLTO-related liabilities in the ordinary course."  Facts at ¶ 27.

---

[10] As explained above, all class claims were discharged by the Settlement Agreement, and the final approval order and claim for class counsels' fees and costs arose when the Circuit Court entered Judgment for fees on August 27, 2014.  *See* Facts, ¶ 25.

Moreover, to the extent that the Trustee now alleges that the August 2014 Class Counsel fee award somehow constitutes a golden creditor, that claim is erroneous. Illinois law provides that attorneys' fees are only due and recoverable by class counsel if a court certifies a class and the court thereafter awards fees. *See Hamer v. Kirk*, 64 Ill. 2d 434, 442, 356 N.E.2d 524, 528 (1976) ("We hold that, in the absence of a fund, a plaintiff's attorney is not entitled to attorney's fees merely because he has conferred a benefit upon members of a class."); 735 ILCS 5/2-807 (establishing that attorneys' fees for representing a certified class are only available as residual funds once a common fund is established); *see also In re Chicago Flood Litig.*, 682 N.E.2d 421, 428-29 (Ill. Ct. App. 1997) ([I]n the absence of a common fund, a plaintiff's attorney is not entitled to fees merely because he or she has conferred a benefit on members of a class. . . . It is axiomatic that class counsel can only receive fees when they successfully recover a fund for the benefit of the class."); *Mars v. Priester*, 563 N.E.2d 977, 980 (Ill. Ct. App. 1990) ("In all cases where an award of attorney fees is appropriate, only those fees which are reasonable will be allowed, the determination of which is left to the sound discretion of the trial court.").

Accordingly, Daniel, Martha, and Jeffrey are entitled to summary judgment on Counts X and XVI for all transfers that occurred prior to November 12, 2012.

**D.    The Trustee cannot recover claims against any of the Horizon Properties LLCs that were not in existence when the Class Action Complaint was filed or not subject to RLTO (Counts I and Count XX)**

The Trustee asserts Count I (Breach of Management Agreement) and Count XX (Equitable Relief Piercing the Veil of the Debtor and Determination that the Horizon Group Companies, Holdings, Daniel, the Daniel Trust, and Jeffrey are Alter Egos of the Debtor) against all of the Horizon Property Owners, which include entities that either were not in existence when the Class Action was filed on June 24, 2009; or did not and do not own property within the City of Chicago,

and therefore, are not subject to the RLTO.[11]  *See* RLTO at § 5-12-030(b) ("'Landlord' means the owner, agent, lessor or sublessor, or the successor in interest of any of them, of a dwelling unit or the building of which it is part."); RLTO at § 5-12-010 (". . . This chapter applies to, regulates and determines rights, obligations and remedies under every rental agreement for a dwelling unit located within the City of Chicago . . ."). These specific Horizon entities that cannot be liable pursuant to Count I or Count XX include:

- Horizon Group VIII, LLC (did not and does not own property within City of Chicago). Facts ¶ 7.

- Horizon Group XXI, LLC (not in existence as of June 24, 2009). Facts at ¶ 8.

- Horizon Group XXII, LLC (not in existence as of June 24, 2009). Facts at ¶ 8.

- Horizon Group XXIII, LLC (not in existence as of June 24, 2009; did not and does not own property within City of Chicago). Facts at ¶ 8.

- Horizon Group XXIV, LLC (not in existence as of June 24, 2009). Facts ¶ 8.

Although the Trustee acknowledges that some of the Horizon Property Owners were not formed until after the Class Action was filed and others owned properties that are not located in Chicago and thus are not subject to the RLTO, *see* 3rd Am. Compl. ¶¶ 28, 38-41, he still joins them as defendants in his Third Amended Complaint. Those entities cannot possibly be required to pay Class Counsel's fee award or any other obligation of the Debtor. *See e.g., SMS Assist L.L.C. v. E. Coast Lot & Pavement Maint. Corp.,* 913 F. Supp. 2d 612, 632 (N.D. Ill. 2012) (holding that owner was not subcontractors' alter ego; nonetheless, alter ego claim is not meant to reimpose liability on a released claim). Accordingly, Count I, Count XX, and any other claim against these Horizon Property Owner entities must fail. Based upon the foregoing and the undisputed facts, the Michael Defendants are entitled to summary judgment on Count I and Count XX as against

---

[11] *See* Facts, ¶¶ 7-8.

Horizon Group VIII, LLC, Horizon Group XXI, LLC, Horizon Group XXII, LLC, Horizon Group

XXIII, LLC and Horizon Group XXIV, LLC.

## CONCLUSION

Based upon the foregoing, the Michael Defendants are entitled to summary judgment on

Counts I and III, and on Counts X and XVI as they relate to transfers that occurred prior to August

17, 2014.  The Michael Defendants are also entitled to summary judgment on Counts I and XX as

against Horizon Group VIII, LLC, Horizon Group XXI, LLC, Horizon Group XXII, LLC, Horizon

Group XXIII, LLC and Horizon Group XXIV, LLC.  In the alternative, pursuant to Fed. R. Civ.

P. 56(d), if the Court finds that summary judgment is not appropriate as described, the Court should

enter partial summary judgment as it deems appropriate, determine which material facts are not

genuinely at issue, and issue an order treating such facts as established.


Dated:  September 7, 2022                          Respectfully Submitted,

                                                   By: */s/*  Daniel A. Zazove _____

                                                   PERKINS COIE LLP

                                                   Daniel A. Zazove
                                                   David J. Gold
                                                   Hailey A. Rutledge
                                                   110 N. Wacker Dr., 34th Floor
                                                   Chicago, IL 60606

                                                   *Counsel for the Michael Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 7, 2022, a copy of ***Memorandum in***

***Support of the Michael Defendants' Motion for Partial Summary Judgment*** was served upon

all counsel of record indicated below via CM/ECF:


The following is the list of parties who are currently on the list to receive email notice/service for
this case.

Paul M Bauch on behalf of Creditor Law Offices of Edward T. Joyce & Associates, P.C., et al.
pbauch@bauch-michaels.com, smohan@bauch-michaels.com

Francis X Buckley, Jr. on behalf of Defendant CITIBANK, N.A., Camp Agawak, Ltd.
fxbuckleyjr@thompsoncoburn.com, aversis@thompsoncoburn.com

Robert M Fishman on behalf of Debtor Horizon Group Management, LLC,
rfishman@shawfishman.com, kjanecki@shawfishman.com

Kenneth Flaxman on behalf of Creditor The Interest Calculation Class & RLTO Summary Class
certified on April 12, 2013 in Bonnen v. Horizon Group Management, LLC, No. 09 CH 20365
(Circuit Court of Cook County, Ill.), et al., kflaxman@joycelaw.com,
etjfirmdocket@yahoo.com; ycameron@joycelaw.com; jschrader@joycelaw.com

Steve Jakubowski on behalf of Creditor Law Offices of Edward T. Joyce & Associates, PC, et al.
sjakubowski@rsplaw.com, docketing@rsplaw.com

Edward T Joyce on behalf of Creditor The Interest Calculation Class & RLTO Summary Class
certified on April 12, 2013 in Bonnen v. Horizon Group Management, LLC, No. 09 CH 20365
(Circuit Court of Cook County, Ill.), et al., ejoyce@joycelaw.com, ycameron@joycelaw.com;
jschrader@joycelaw.com; jdoherty@joycelaw.com; etjfirmdocket@yahoo.com

David Mangian on behalf of Defendant CITIBANK, N.A., dmangian@thompsoncoburn.com

Andrew J Maxwell on behalf of Trustee Andrew J Maxwell, ESQ, et al.,
maxwelllawchicago@yahoo.com, trustee@maxwellandpotts.com;
naelipas@maxwellandpotts.com; cjcapo@maxwellandpotts.com;
jhsmith@maxwellandpotts.com; vbarad@maxwellandpotts.com

Kenneth A. Michaels, Jr on behalf of Creditor Law Offices of Edward T. Joyce & Associates,
PC, et al., kmichaels@bauch-michaels.com, pbauch@bauch-michaels.com

Jill L Nicholson on behalf of Defendant Anne M. Gannon, Tax Collector, Palm Beach County,
Florida, jnicholson@foley.com

Anthony J. ONeill on behalf of Creditor Law Offices of Edward T. Joyce & Associates, P.C., et al., aoneill@lakelaw.com

Susan Poll Klaessy on behalf of Defendant Anne M. Gannon, Tax Collector, Palm Beach County, Florida, spollklaessy@foley.com

Paul V Possinger on behalf of Defendant Friends of the Israel Defense Forces, Inc. ppossinger@proskauer.com, mthomas@proskauer.com; mlespinasselee@proskauer.com; nwilliams@proskauer.com; erodriguez@proskauer.com; npetrov@proskauer.com; ddesatnik@proskauer.com

Mark L Radtke on behalf of Attorney Shaw Fishman Glantz & Towbin LLC, et al., mradtke@shawfishman.com, jbunton@shawfishman.com

Marc S Reiser on behalf of Debtor Horizon Group Management, LLC, mreiser@shawfishman.com, mlites@shawfishman.com

Arie Rubenstein on behalf of Defendant United States of America, arie.m.rubenstein@usdoj.gov, northern.taxcivil@usdoj.gov

Carolina Y. Sales on behalf of Creditor Law Offices of Edward T. Joyce & Associates, P.C., et al., csales@bauch-michaels.com, smohan@bauch-michaels.com

Jeffrey Sobek on behalf of Creditor The Interest Calculation Class & RLTO Summary Class certified on April 12, 2013 in Bonnen v. Horizon Group Management, LLC, No. 09 CH 20365 (Circuit Court of Cook County, Ill.), et al., jeffs@jsslawoffices.com

Trinitee G. Green on behalf of Defendant Addison Reserve Country Club, Inc., tggreen@polsinelli.com

Bradley Sarnell on behalf of the United States of America, bradley.a.sarnell@usdoj.gov

Jean Soh on behalf of Defendant Addison Reserve Country Club, Inc., jsoh@polsinelli.com, chicagodocketing@polsinelli.com

Jerry L Switzer on behalf of Defendant Addison Reserve Country Club, Inc., jswitzer@polsinelli.com, chicagodocketing@polsinelli.com

Jeramy D. Webb on behalf of Defendant Friends of the Israel Defense Forces, Inc., jeramy.webb@lw.com

Via first-class U.S. Mail:

Bradley J. Lorden
Proskauer Rose LLP
70 West Madison
Suite 3800
Chicago, IL 60602
on behalf of Defendant Friends of the Israel Defense Forces, Inc.

　　　　　　　　　　　　　　　　　　　 _/s/_ Daniel A. Zazove
　　　　　　　　　　　　　　　　　　　 Daniel A. Zazove