IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS — EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 14-41230 |
| HORIZON GROUP MANAGEMENT, LLC, | ) | |
| | ) | Chapter 7 |
| _____Debtor._ | ) | |
| ANDREW J. MAXWELL, trustee for the | ) | |
| estate of Horizon Group Management, LLC, | ) | |
| | ) | Hon. Timothy A. Barnes |
| Plaintiff, | ) | |
| v. | ) | Adv. Proc. No. 16-00394 |
| | ) | |
| DANIEL MICHAEL, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**TRUSTEE'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Andrew J. Maxwell ("Plaintiff" or "Trustee"), as Chapter 7 trustee for the

estate of Horizon Group Management, LLC (the "Debtor" or "Horizon Management"),

by and through his attorneys, BAUCH & MICHAELS, LLC, for his Response in

Opposition to the Defendants' Motion for Partial Summary Judgment (the "Motion")

[ADV ECF No. 305]:

## I. INTRODUCTION

The Debtor was the agent and property manager for the Horizon Group

Companies, pursuant to a Management Agreement that obligated the latter to pay

for and reimburse any and all costs, fees and expenses incurred by the Debtor in the

operation of the Properties and the Debtor's business. The Management Agreement

also provided that if the Debtor were terminated, the Horizon Group Companies

would assume the Debtor's obligations under any unperformed agreements. In

addition, the Debtor's Operating Agreement provided that the members "shall" make capital contributions "reasonably necessary to meet the expenses and obligations of the [Debtor]." All the Horizon Group Companies assumed liability for the Debtor's obligations and unperformed agreements when they signed onto the Management Agreement.

The Debtor and the Horizon Group Companies continually violated the Chicago RLTO by, *inter alia*, commingling tenant security deposits from the Debtor's inception until at least 2012. Bonnen, Class Counsel, and other known and unknown tenants hold unsatisfied claims for statutory damages and attorneys' fees under the RLTO that arose prior to the four years preceding the Debtor's filing of the bankruptcy case. In addition, Citibank, a creditor of certain of the Defendants, held a contingent Section 502(h) claim that arose as early as December of 2010. Finally, the Internal Revenue Service holds a claim dating back to the 2012 tax year.

The Defendants have moved for summary judgment on the Trustee's claims for breach of the Management Agreement and the Operating Agreement.[1] The Defendants' have also moved for summary judgment on the Trustee's Section 544(b) claims contending that there is no "golden creditor."

The Horizon Group Companies and the Michael Trust are liable for all the Debtor's obligations under the plain language of the Management Agreement and the Operating Agreement. There are multiple extant known and unknown golden

---

[1]   The Court previously rejected these same legal arguments in denying the Defendants' Motion to Dismiss Counts I and III of the Trustee's Second Amended Complaint. [Adv. ECF. Nos. 43, 51 at pp. 19-26, 56, 63; 64 at pp. 8-11 and 76.

creditors whose claims arose prior to the four years preceding the filing of the bankruptcy case. Thus, the Court should deny the Motion for Summary Judgment.

## II. FACTS

The Horizon Group Companies owned and operated a portfolio of approximately 1,300 residential apartment units in Chicago. SAUF 2. The Debtor served as the exclusive management agent and property manager for the Horizon Group Companies from 2001 until May of 2015, pursuant to a series of management agreements. SAUF 1, 3. *See* Appendix I for applicable provisions.

On June 1, 2007, the Debtor, as agent for one of the Horizon Group Companies, entered into a lease agreement with Bonnen, pursuant to which Bonnen paid the Debtor and the Horizon Group Companies a security deposit. SAUF 9. The Debtor and the Horizon Group Companies failed to hold Bonnen's security deposit in a segregated deposit account. SAUF 6. The Debtor and the Horizon Group Companies also failed to credit or pay Bonnen the correct amount of interest on her security deposit. SAUF 8.

As late as December 2012, the Debtor and the Horizon Group Companies failed to hold tenant security deposits in a segregated deposit account. SAUF 4, 5, 6,10. The Debtor and the Horizon Group Companies did not disclose to tenants or its defense counsel that they had failed to hold tenant security deposits in a segregated account. SAUF 7. The Debtor and the Horizon Group Companies also failed to pay the correct amount of interest on hundreds of tenant security deposits.  SAUF 8, 11.

On June 24, 2009, Bonnen filed her complaint initiating the Class Action, which asserted claims under the RLTO, based on the Debtor's failure to pay the

3

correct amount of interest on her security deposit and deliver appropriate safety notices. SUF 11; SAUF 12. The Debtor vigorously defended the Class Action. SAUF 14. Holdings paid all the legal fees and other expenses incurred by the Debtor in defending the Class Action. SAUF 15. The Debtor did not record the legal fees incurred and paid in defending the Class Action as an expense of its operations. SAUF 17. While the Class Action was pending, the Debtor paid millions of dollars of personal expenses of Daniel and Martha, including over a million dollars of personal expenses charged to Martha's Citibank credit card. [Claim No. 20].

On November 25, 2013, the Debtor entered a Stipulation for Settlement of the Class Action (the "Stipulation"), in which, *inter alia*, Daniel represented that the Debtor had the "resources" to perform its obligations under the Stipulation. SUF 15; SAUF 18. The whole purpose of the settlement was to obtain a release of liability for the Horizon Group Companies. SAUF 19.

On December 22, 2013, the Circuit Court entered an order preliminarily approving the Stipulation. SAUF 20. On January 16, 2014, Class Counsel filed their fee application in the Circuit Court seeking an award of $871,592.20 in fees and costs. SAUF 24; SAUF 21. The Debtor and the Horizon Group Companies did not seek to withdraw from the Stipulation and did not advise the Circuit Court that they lacked the resources to perform. *See generally* docket in *Bonnen* action. On March 13, 2014, the Circuit Court entered its order finally approving the Stipulation of Settlement. SAUF 22. Holdings transferred $40,000 to the class action claims agent for the payment of undisputed claims and $5,000 to Bonnen for payment of the class

4

representative incentive payment. SAUF 16. The Debtor objected to approximately $38,000 in disputed Class Claims (the "Disputed Class Claims") SAUF 25. Class Counsel and the Debtor's Counsel were negotiating over the allowance of such claims. SAUF 26. On August 27, 2014, the Circuit Court entered its order awarding attorneys' fees and expenses of $833,455.32 (the "Fee Order"). SUF 25, 27. The Debtor and the Horizon Group Companies failed to pay any part of the amounts due under the Fee Order. SAUF 30. On November 14, 2014, the Debtor filed its voluntary petition for relief under Chapter 11 of the Code. [ECF No. 1]; SUF 26.

## III. ARGUMENT

A.   The Horizon Group Companies Are Obligated to Compensate or Reimburse the Debtor for Any and All Costs, Expenses and Fees Incurred in the Operation of the Properties and the Debtor's Business

The Stipulation was a voluntary contractual undertaking by the Debtor and the Horizon Group Companies in which they admitted no liability on the underlying strict liability claims and agreed to pay specific sums to obtain a release of claims as provided therein. [2] The Stipulation was executed by Daniel, the manager of the

---

[2]   Although the Defendants' Motion for Summary Judgment does not seek relief based on any contract of "release," the Defendants improper arguments in their SUF rely implicitly on the various claim bar and release provisions of the Stipulation. The Defendants do not address, however, the consequences of the Debtor's material breach of the Stipulation. A material breach of a contract by one party releases the other party from its contractual obligations. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 70, 310 Ill. Dec. 274, 284-85, 866 N.E.2d 85, 95-96(2006). Where a breach goes to an essential element of a compromise agreement and in effect amounts to a refusal to perform or an abandonment, the non-breaching party may elect to regard the agreement as rescinded and proceed on its original cause of action or may sue on the agreement for the breach. *Trapkus v. Edstrom's, Inc.* (1986), 140 Ill. App. 3d 720, 489 N.E.2d 340. In either case, none of the claim bar and release provisions are operative.

Debtor and the manager of Holdings, which in turn is the manager of the Horizon Group Companies. The Stipulation was entered to obtain a release of liability for the Horizon Group Companies and the other Defendants. Like all its other obligations and the expenses of the operation of its business and the Properties, the Debtor had no ability to perform under the Stipulation unless Holdings and the Horizon Group Companies provided it with the funds to perform. Response to SUF 27. In this context, the Court must interpret the Management Agreement to determine whether the Horizon Group Companies were obligated to "compensate" or "reimburse" the Debtor for "any and all costs, expenses (direct and indirect) and fees" relating to its performance under the Stipulation.

The Court's interpretation of the Management Agreement is guided by general contract principles, which are primarily focused on determining the intent of the parties as expressed by the plain language of the agreement. *Thompson v. Gordon*, 241 Ill. 2d 428, 441, 349 Ill. Dec. 936, 943, 948 N.E.2d 39, 46 (2011). The Court should not read contract terms in isolation but rather should consider them in the context of the contract as a whole. *Id.* The Court should not interpret a contract in a manner that would nullify or render a provision meaningless, or in a way that is contrary to the plain and obvious meaning of the language used. *Id.*

The Defendants erroneously argue that (1) the Debtor's expenses relating to the Stipulation are not within the scope of the Management Agreement's compensation provisions; and (2) the Horizon Group Companies are not obligated to indemnify the Debtor for its own negligence or intentional misconduct. Specifically,

6

the Court must determine whether the Management Agreement provisions obligating

the Horizon Group Companies to compensate and reimburse the Debtor for "any and

all" costs, expenses, and fees, and the express provision for the Horizon Group

Companies to assume all of the Debtor's obligations under any contract upon

termination were nullified and rendered meaningless by the provision excusing the

Horizon Group Companies from indemnifying the Debtor for negligence or intentional

misconduct.

1. The General and Specific "Any and All" Terms of the Management Agreement Do Not Exclude the Expenses of Resolving RLTO and Related Claims

The Management Agreement appointed the Debtor as agent and property

manager for the Debtor and granted it broad authority over the operation of the

Horizon Group Companies and the Properties. Section 1.1. The Management

Agreement provides that the Horizon Group Companies would pay all reasonable

expenses of the Debtor that they approved or were provided for in the Management

Agreement. Section 1.1. The Management Agreement expressly declares that in

taking any action, the Debtor would be acting only as agent for the Horizon Group

Companies and that nothing would be construed as requiring the Debtor "to bear any

portion of losses arising out of or connection with the [Horizon Group Companies] or

the operation of the Properties." Article II. In addition, the Management Agreement

contains extremely broad compensation provisions that obligated each of the Horizon

Group Companies to pay as compensation to the Debtor:

> any and all costs, expenses (direct and indirect) and fees
> incurred by [the Debtor] on behalf of an owner in
> connection with and allocable to the operation and

management of the Properties owned by the Owner and the operation of [the Debtor] that is not otherwise reimbursed to [the Debtor] as provided in this Agreement …. And those expenses incurred by [the Debtor] in relation to its own operations and the operation of each of the Properties owned by the [Horizon Group Companies].

Article IX.

Article IX has two categories of compensation measures: (1) any and all costs, expenses and fees incurred on behalf of a particular owner and allocable to the particular owner's property **and the operation of the Debtor that is not otherwise reimbursed to the Debtor as provided in the agreement**; and (2) expenses incurred by the Debtor in relation to its own operations and the operation of each of the Properties. The plain language of the provision reflects an intent that any and all expenses that the Debtor incurred in the operation of its business and the operation of the Properties are reimbursable, whether they can be allocated to a particular property, and whether they are otherwise reimbursed under the agreement.

The "any and all" language is not ambiguous. *See, e.g, Pierce v. Atchison, T. & S.F. Ry.,* 65 F.3d 562, 568 (7th Cir. 1995). The Defendants argue, however, that because expenses relating to RLTO claims are not specifically identified in the compensation and expense reimbursement provisions, they must be excluded. In *Kessinger v. Grefco, Inc.*, 875 F.2d 153, 155 (7th Cir. 1989), the buyer of a business contended that an agreement to assume "all of the seller's liabilities" was "ambiguous" because it did not specifically mention negligence and products liability claims. The Seventh Circuit expressly rejected this argument because "all" means

8

"all," finding that there was no implied exclusion of tort claims. *Id.* The "any and all" language makes no exclusions and must therefore be deemed to include legal fees and expenses and settlement costs incurred by the Debtor in connection with the operation of its business and the Properties, particularly where they were specifically authorized and approved by the Horizon Group Companies.

Litigation and settlement costs are an ordinary and usual cost of managing and operating residential apartment buildings in Chicago. In particular, RLTO claims are relatively certain to be asserted against a landlord, and the litigation and settlement of such claims is an ordinary cost of doing business in Chicago. This was a fact well known to the Defendants at the time of the execution of the Management Agreement. Yet, there is no exclusion for settlement costs or litigation expenses, and no specific exclusion for RLTO costs and expenses. Moreover, Daniel and Jeffrey knew to an absolute certainty that the Debtor could not pay such costs and expenses unless the Horizon Group Companies paid an amount equal to such costs and expenses to the Debtor when they executed the Stipulation on behalf of "Horizon." Thus, contrary to the Defendants' argument, the plain unambiguous language of the Management Agreement obligates the Horizon Group Companies to pay compensation to the estate for all the costs, expenses and fees incurred by the Debtor.

Moreover, even if the Court were to assume an ambiguity in the language of the compensation and reimbursement provisions, the Debtor and the Horizon Group Companies' course of performance under the Management Agreement reflects an intent that the Horizon Group Companies were obligated to pay all costs, expenses

9

and fees related to the Class Action and the Stipulation. *See Old Colony Trust Co. v. City of Omaha*, 230 U.S. 100, 118 (1913) ("the practical interpretation of a contract by parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence."); *Chicago and North Western Railway Co. v. Peoria and Pekin Union Railway Co*., 46 Ill. App. 3d 95, 360 N.E.2d 404, 407, 4 Ill. Dec. 468 (Ill. App. 1977) (Where "the pertinent contract language is ambiguous," the court may look to the parties' "course of conduct" to resolve their dispute.)

Holdings and the Horizon Group Companies paid all the Debtor's defense and settlement costs and expenses of the Class Action, except for the amounts awarded under the Fee Order.  It is therefore incongruous for the Horizon Group Companies to argue that they were not obligated to pay any and all costs, expenses and fees relating to the Class Action when they actually did so for years.

> 2. The Indemnification Provision Is Not Implicated Because There Was No Finding or Admission of Negligence or Intentional Misconduct in the <u>Stipulation and the Trustee is not Seeking Indemnification</u>

The Indemnification Provision is not implicated by the Trustee's demand under the Management Agreement.  The Trustee is not seeking indemnification against the underlying claims in the Class Action. The Trustee is seeking compensation and reimbursement in the form of the costs, expenses, and fees the Debtor incurred in procuring a release of the Defendants' liability in the Class Action pursuant to the Stipulation. A Stipulation which the Defendants directed the Debtor to execute for their own benefit

10

The RLTO imposes strict liability, without fault upon the Debtor and the Horizon Group Companies.   SUF 12. The Stipulation specifically provides that "Horizon" is not admitting liability with respect to the Class Action claims. Moreover, the indemnification provision would not bar a claim arising under the RLTO's strict liability provisions, because the Debtor could be held liable for RLTO violations in the absence of negligence or intentional misconduct. Thus, the indemnification exculpation does not bar the Trustee's claims under the Management Agreement.

The Defendants' reliance on *Bank of Commerce v. Hoffman*, 829 F.3d 542 (7th Cir. 2016) is misplaced. *Bank of Commerce* involved construing the scope of conflicting general and specific release provisions. Before applying the rule of construction, the court necessarily had to find a conflict among the terms of the contract. There is no conflict between the compensation provisions in Article XI and the exculpation from the indemnification provision in Article XV, and as discussed in the following Section, the termination provision of Article XIV, which is the most specific provision of the Management Agreement concerning the Horizon Group Companies responsibilities with respect to the Stipulation. Thus, Article XV does not limit the Trustee's claims.

3.     The Management Agreement Expressly Provides for the Horizon Group Companies Assumption of Liability Under any Contract that the Debtor <u>Entered into Prior to Termination</u> .

The Management Agreement also specifically obligates the Horizon Group Companies to make all payments due under the Stipulation: Section 14.3(a) – "Responsibility for Payments" provides that "[u]pon termination of this agreement, [Horizon Group Companies] shall assume the obligations of any contract, liability or

11

outstanding bill executed or incurred by [Debtor] and authorized by the terms of this Agreement to and on behalf of [Horizon Group Companies]."

The Horizon Group Companies terminated the Debtor by engineering the assignment of the Management Agreement to Jeffrey's new management company. By operation of the Management Agreement, the Horizon Group Companies assumed the Debtor's obligations under the Stipulation. The Horizon Group Companies have further breached the Management Agreement by refusing to discharge the Debtor's obligations under the Stipulation.

4. The Horizon Group Companies Are Obligated to Compensate the Debtor for All Costs, Expenses and Fees Incurred in the Operation of its Business.

The Management Agreement obligates the Horizon Group Companies to reimburse the Debtor for, *inter alia*, all costs, expenses and fees incurred in the operation of the Debtor's business. None of the remaining claims that the Defendants contest are excluded from the scope of the Management Agreement compensation provisions. Moreover, the bankruptcy related expenses and the retention of Goldberg Kohn were all expenses that were incurred at the direction of and with the express authority of the Defendants. The Trustee has no obligation to use the proceeds of the sale of the Debtor's assets to satisfy obligations to which the estate has an express claim for reimbursement from the Horizon Group Companies. The Court should deny the Defendants Motion for Summary Judgment on the Trustee's claims for breach of the Management Agreement.

B.    Daniel and the Michael Trust Breached Their Obligations to Make Additional
Capital Contributions Pursuant to the Operating Agreement.

Daniel is both the manager of the Debtor and the trustee of the Michael Trust,

which is the Debtor's sole member. The Defendants concede that Section 9.02 of the

Operating Agreement specifically provides that the Michael Trust "shall be required

to make such additional Capital Contributions as shall be determined" by the Michael

Trust "from time to time to be reasonably necessary to meet the expenses and

obligations of the [Debtor]." After the Michael Trust makes such determination,

Daniel as manager of the Debtor, "shall give written notice to… [the Michael Trust]

of the amount of required contribution, and [the Michael Trust] shall deliver to [the

Debtor] its…[capital contribution] …no later than thirty days following the date such

notice is given." The plain language of the capital contribution provision is

mandatory, not permissive.

Thus, the Operating Agreement obligates Daniel as trustee of the Michael

Trust to determine what capital contribution the Debtor reasonably needs to meet its

expenses and obligations, as manager of the Debtor to give notice of such capital

contribution to the Michael Trust, and as trustee of the Michael Trust to make such

capital contribution to the Debtor within 30 days of such notice. Daniel and the

Michael Trust breached the Operating Agreement by, *inter alia*, failing to make a

good faith determination of the amount of the necessary capital contribution, to

provide notice, and to make the capital contribution. *See, e.g., Kolb v. Chrysler Corp.*,

661 F.2d 1137 (7th Cir. 1981).

The Defendants remarkably contend that the Trustee has no claim for breach of the Operating Agreement on behalf of the Debtor because Daniel as trustee and manager failed to satisfy the conditions precedent of determining the amount of the capital contribution and providing notice thereof. The Defendants ignore that Daniel had a good faith obligation to determine the amount of the capital contribution, *id.,* and that Daniel's failure to perform excused any conditions precedent. *Grill v. Adams,* 123 Ill. App. 3d 913, 918 (1st Dist. 1984) ("Where the obligation of one party is subject to the occurrence of a condition precedent, the duty of good faith and fair dealing is imposed upon that party (Restatement (Second) of Contracts sec. 205, Explanatory Notes to sec. 245, comment a, at 258 (1981).) A party cannot take advantage of his own conduct and claim that failure of the fulfillment of a condition therefore defeats his liability"); *Yale Development Company, Inc. v. Oak Park Trust & Savings Bank, Trustee*, 26 Ill. App. 3d 1015, 1020 (2nd Dist. 1975) ("A party who deliberately prevents the fulfillment of a condition on which his liability under a contract depends cannot take advantage of his own conduct and claim that the failure of the fulfillment of the condition defeats his liability."); *see also* Restatement (2d) of Contracts, Section 245 ( *"Effect of a Breach by Non-Performance as Excusing the Non-Occurrence of a Condition:"* "Where a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused."). Rule 7070(a) specifically authorizes the Court to appoint a person to perform a specific act, such as determining the amount of the capital contribution and providing notice. *Dick v. Sprint Communs. Co. L.P.*, 297 F.R.D. 283 (W.D. Ky. 2014); *In re*

14

*Mercer*, No. 05-40445-H2-11, 2006 Bankr. LEXIS 1594 (Bankr. S.D. Tex. June 28, 2006).

Finally, the Defendants argue that the Michael Trust was excused from making a capital contribution by Section 18.02 because the Debtor ceased to be a going concern when the Debtor sold its assets to Jeffrey's new management company. The obligation to make the capital contribution, however, arose when the Defendants authorized the Debtor to execute the Stipulation on their behalf in November of 2013. Moreover, the Defendants represented to this Court that the Debtor was a going concern as of the filing of the Bankruptcy Petition, [ECF No. 12 at 13] and at the time of the sale [ECF No. 49]. Thus, with respect to their obligations under the Operating Agreement, Daniel and the Michael Trust are barred from asserting a "liquidation" defense. *In re World Mktg. Chi., LLC*, 564 B.R. 587, 602 (Bankr. N.D. Ill. 2017) (representations regarding reorganization intention precluded application of the liquidation exception).

Finally, the Defendants' standing argument is contrary to the plain unambiguous language of Section 9.02, which provides that it 9.02 is deemed to be for the benefit of the Company, *i.e.*, the Debtor. Since the Trustee succeeded to all the Debtor's rights under the Operating agreement, the Trustee has standing to enforce the Michael Trust's obligation to make capital contributions. *See, e.g., BMA Ventures, LLC v. Prillaman (In re Minton)*, 2017 Bankr. LEXIS 199 (Bankr. C.D. Ill. Jan. 23, 2017). The Defendants' motion for summary judgment on Count III must be denied.

C.   Bonnen, Class Counsel, the Disputed Class Claimants, the Unknown Security Deposit Claimants, Citibank and the Internal Revenue Service are All Golden Creditors.

Numerous "golden creditors" existed before and during the four years prior to the filing of the bankruptcy petition. The Defendants argue since Bonnen's RLTO claim was paid prior to the bankruptcy she is not a creditor, and Class Counsel did not become a creditor with respect to the claim for attorney's fees until the State Court entered the Fee Order. Defendants also argue that since the Disputed Class Claimants did not have their claims adjudicated by the Circuit Court prior to the bankruptcy, they are not creditors. The Defendants ignore that thousands of unidentified tenants that paid security deposits to the Debtor and the Horizon Group Companies after 2001, which the latter failed to hold in a segregated deposit account, are creditors of the estate (the "Unknown Security Deposit Claimants").[3] Further, the Defendants ignore that Citibank is also a creditor that held a contingent Section 502(h) claim from at least December of 2010. [ECF. No. 460, 462; Claim No. 20]. Finally, Defendants ignore that the Internal Revenue Service has filed claims for taxes accruing during the 2012 and 2013 tax periods. [Claim No. 20].

   1.   *The RLTO claims Arose at the Time of the Violations.*

Bonnen, Class Counsel, the Disputed Class Claimants, and the Unknown Security Deposit Claimants' claims arose under the RLTO. The RLTO is a

---

[3]   The Trustee sought Daniel's cooperation and discovery in order to identify the Unknown Security Deposit Claimants and provide them notice of the bankruptcy case and an opportunity to file claims. Despite this Court's order [ECF. No. 127], Daniel has disavowed any obligation to cooperate with the Trustee's investigation and the Defendants have otherwise refused to identify the Unknown Security Deposit Claimants.

16

comprehensive consumer protection landlord-tenant law that governs residential landlord tenant relationships relating to property located in the City of Chicago. RLTO 5-12-100; *Lawrence v. Regent Realty Grp.*, 197 Ill. 2d 1, 257 Ill. Dec. 676, 754 N.E.2d 334 (2001). There are several RLTO provisions that are relevant to the Defendants' Motion for Summary Judgment. First, Section 5-12-080 (a) requires that tenant security deposits be held in segregated deposit accounts and that they not be commingled with the landlord's general funds. Second, Section 15-12-080(c) requires the landlord to pay or credit the tenant with interest on the security deposit at a rate determined by the City. Third, Sections 15-12-080(f) and 15-12-180 provide the tenant has a cause of action for violations of the RLTO security deposit provisions and may recover (1) its security deposit; (2) statutory damages equal to double the amount of the security deposit; and (3) attorney's fees and costs. *Reynolds v. Thanh Phan*, 2022 IL App (1st) 210177-U.

Bonnen's claim arose (and she became a creditor) when the Debtor violated the RLTO in 2007-09 by not holding her security deposit in a segregated account and failing to pay the correct rate of interest on such security deposit. Similarly, the claims of the Disputed Class Claimants and the Unknown Security Deposit Claimants arose at the time the Debtor and the Horizon Group Companies accepted their security deposits and failed to hold them in a segregated account, or failed to pay the correct amount of interest on the security deposits.  Bonnen's claim included her right to RLTO statutory damages and attorney's fees and costs. *Trutin v. Adam*, 2016 IL App (1st) 142853, 403 Ill. Dec. 617, 54 N.E.3d 277. Thus, under either the

conduct or accrual test,[4] Bonnen's claim existed prior to the four years preceding the

petition date. Because Bonnen is the holder of the claim for attorney's fees,[5] she is

still a creditor of the estate and alone satisfies the Golden Creditor rule. [Claim No.

17]. Alternatively, if Class Counsel is regarded as the holder of the claim for

attorneys' fees, its claim likewise arose no later than June of 2009 when Bonnen

employed Class Counsel to prosecute her RLTO claims. [Claims Nos. 4 and 5].

That the claims were contingent and unliquidated at that time does not defeat

creditor status. The Illinois UFTA defines claims broadly to include contingent and

unliquidated claims and specifically provides that the holder of the claim need not

have obtained a judgment on the claim. 740 ILCS 160/2(c); *Levy v. Markal Sales
Corp.*, 311 Ill. App. 3d 552, 244 Ill. Dec. 120, 724 N.E.2d 1008 (2000); *A.P. Properties,
Inc. v. Goshinsky*, 186 Ill. 2d 524, 529, 714 N.E.2d 519, 521, 239 Ill. Dec. 600 (1999);

*Falcon v. Thomas*, 258 Ill. App. 3d 900, 909, 629 N.E.2d 789, 795, 196 Ill. Dec. 244

(1994). Thus, the Defendants' argument that Bonnen's claim to attorneys' fees and

---

[4]    *See, e.g., St. Catherine Hosp. of Ind., LLC v. Ind. Family & Soc. Servs. Admin.*,
800 F.3d 312, 316-18 (7th Cir. 2015).

[5]    Although the fee order is entered in the name of Class Counsel, the "prevailing
party attorneys fee" claim belongs to the Bonnen. *See, e.g., Astrue v. Ratiff*, 560 U.S.
586 (2010). As a matter of procedure, absent a dispute with the client or the interest
of some third party, the attorney may apply for fees and the award may be made in
the attorneys' name. *Id.; see also Lowrance v. Hacker*, 966 F. 2d 1153,1156 (7th Cir.
1992); *Samuels v. Am. Motors Sales Corp.*, 969 F. 2d 573, 576-77 (7th Cir. 1992). This
procedure is frequently employed because although the award is to the prevailing
party, the prevailing party does not have the right to retain the fees and not pay its
attorney. *See, e.g., United States ex rel Virani v. Jerry M Lewis Truck Parts &
Equipment*, 89 F. 3d 574, 577-79 (9th Cir. 1996).

18

costs only arose upon the entry of the Fee Order is contrary to the plain language of the Illinois UFTA.

Despite the Fee Order, the Defendants argue that there is no claim for attorneys' fees in the Class Action because no fund was created. This argument is not supported by existing law, or a good faith argument for the extension of existing law. As reflected in the common fund cases cited by the Defendants, the common fund doctrine may support an award of attorneys' fees **in the absence of a contract or statute providing for such an award.** *Hamer v. Kirk*, 64 Ill. 2d 434, 437, 1 Ill. Dec. 336, 337-38, 356 N.E.2d 524, 525-26 (1976) ("The general rule is that, in the absence of a statute or an agreement of the parties, the successful party may not recover attorney's fees or the costs of the litigation. [ citation omitted] An exception to that rule is that attorney's fees may be awarded where a fund has been brought within the control of the court by the parties.") Where a contract or statute provides for an award of attorneys' fees, resort to the common fund doctrine is unnecessary. *Mendez v. Town of Cicero*, 2016 IL App (1st) 150791, 57 N.E.3d 614, 2016 Ill. App. LEXIS 414 (Ill. App. Ct. 1st Dist. 2016) (Attorney's fees awarded for vindication of right under statute even though no damages recovered). This argument is also precluded by the Fee Order itself.

2.    *The Disputed Class Claimants Held Allowable Claims*

The Defendants contend that the Disputed Class Claimants are not golden creditors either because they did not submit their claims to the Circuit Court for resolution as provided for in the Stipulation, or because they were paid under a 2019

19

settlement with the Northern Trust Bank.[6] The Defendants ignore that the Stipulation required the Disputed Class Claimants to exhaust settlement negotiations, which were undisputedly ongoing at the time the bankruptcy was filed. Stipulation at 2.(g) vii. They also ignore that upon the filing of the bankruptcy petition, the claims resolution was centralized in this Court. *See, e.g., In re USA Gymnastics*, No. 18-09108-RLM-11, 2020 Bankr. LEXIS 1090 (Bankr. S.D. Ind. Apr. 20, 2020) Finally, the Defendants previously conceded that if the Disputed Class Claimant held claims as of the filing of the bankruptcy case, their later payment would not defeat their status as golden creditors. [ADV ECF. No. 161 ]; *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697 (Bankr. N.D. Ill. 2014).

3.    *Citibank held a Contingent Section 502(h) Claim prior to the Four Years*

As reflected in Adversary No. 16-414, Citibank received potentially avoidable transfers before, during and after December of 2010. [Adv. ECF 75] As a result, Citibank held a contingent Section 502(h) claim as of that date. Citibank has now filed its Section 502(h) claim pursuant to the terms of its settlement with the Trustee. Claim No. 20. [ECF Nos. 460, 462]. Citibank is a golden creditor.

4.    *Internal Revenue Service holds a Claim for 2012 Taxes*

The Internal Revenue Service has filed a claim for taxes that accrued during the 2012 and 2013 tax years. [Claim Nos. 18 and 19]. The Internal Revenue Service is a golden creditor. *Id.*

---

[6]    The settlement of the Northern Trust Bank case did not occur until May 23, 2019. *See Law Offices of Edward T. Joyce v. Northern Trust Bank,* 2016 L 011227.

D.     All of the Horizon Group Companies Assumed Liable Under the Management
       Agreement for all of the Cost, Fees and Expenses of the Debtor's Operations

The Management Agreement obligated the Horizon Group Companies to reimburse all of the Debtor's operating expenses. There is no exclusion for RLTO, bankruptcy, or general litigation expenses. The Horizon Group Companies that signed on to the Management Agreement after the institution of the Class Action were on actual knowledge that the Debtor was likely to continue to incur expenses in defending the Class Action and most likely in settling the strict liability claims. Yet, none of them negotiated an exclusion from their obligation to reimburse the Debtor for its expenses related to the defense of the Class Action, or their express undertaking to assume any liability under the Stipulation upon the Debtor's termination. These Horizon Group Companies may have unwittingly assumed an obligation to reimburse the Debtor for obligations for which they otherwise had no liability, but such is the power of contract. *See, e.g., Itg Brands v. Reynolds Am.*, No. 2017-0129-LWW, 2022 Del. Ch. LEXIS 281 (Del. Ch. Sep. 30, 2022).

Likewise, these Horizon Group Companies had actual knowledge that Daniel operated "Horizon Realty Group," which included the Debtor and the Horizon Group Companies, as mere alter egos of each other and himself. These Horizon Group Companies willingly participated in the Horizon Realty Group's bad faith plan to evade their obligations under the Stipulation and Management Agreement. The Defendants attempt to argue that since they were "released" under the Stipulation, they cannot be held liable as alter egos of the Debtor. The Debtor, however, breached

21

the Stipulation and it therefore affords no protection to the Horizon Group Companies. *See* footnote 2.

## **CONCLUSION**

The Court should deny the Defendants' Motion for Partial Summary Judgment: (1) the Horizon Group Companies are obligated to compensate the Debtor for any and all costs, expenses and fees relating to the operation of the Properties and the Debtor's business and to discharge the Debtor's obligations under the Stipulation; and, (2) there are multi-Golden Creditors that support the Trustee's use of Section 544(b) to avoid the Debtor's transfers to or for the benefit of the Defendants during the 4 years preceding the filing of the bankruptcy case.

Dated: October 17, 2022                          ANDREW J. MAXWELL, TRUSTEE

By: /s/ Paul M. Bauch
     One of his attorneys

Paul M. Bauch (ARDC #6196619)
Anthony J. O'Neill (ARDC#6295313)
Carolina Y. Sales (ARDC #6287277)
Bauch & Michaels, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel.: (312) 588-5000
Fax: (312) 427-5709
pbauch@bmlawllc.com
aoneill@bmlawllc.com
csales@bmlawllc.com