IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS — EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 14-41230 |
| HORIZON GROUP MANAGEMENT, LLC, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ANDREW J. MAXWELL, trustee for the ) | |
| estate of Horizon Group Management, LLC, ) | |
| ) | Hon. Timothy A. Barnes |
| Plaintiff, ) | |
| v. ) | Adv. Proc. No. 16-00394 |
| ) | |
| DANIEL MICHAEL; et al; ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN
EXPERT OPINIONS OF REBUTTAL EXPERT MELISSA S. KIBLER**

Andrew J. Maxwell (the "Trustee"), as Chapter 7 trustee for the estate of Horizon Group Management, LLC (the "Debtor"), hereby submits his Reply Memorandum in support of his Motion for the entry of an order of excluding certain of the opinions of the Rebuttal Expert Melissa S. Kibler ("Kibler") as set forth in her report (hereafter cited as "Kibler Report"):

**INTRODUCTION**

For well over a decade the Michaels unlawfully used tenant security deposits to pay for, *inter alia*, Daniel's country club, Martha's shopping sprees, and Jeffrey's children's summer camp. After being advised by their attorneys repeatedly that the Debtor and the Horizon Group Companies had RLTO liability to the Bonnen class and to thousands of other tenants (not members of Bonnen class) that had paid security deposits, and that they should not have the Debtor file bankruptcy, they

nonetheless pursued an aggressive litigation strategy characterized by systematic denial and delay tactics. In fact, Jeffrey advised his attorney that the Debtor had "minimal assets" and that he was only using the bankruptcy as a "sabre." **Exhibit 1.**

When the Trustee requested production of the Horizon Group Companies gross rental information, they refused on the grounds that the information was not relevant and that it would be burdensome to produce. This failure to produce was not substantially justified and not harmless. The Trustee was not required to expend the estate's limited resources to compel production.[1] The Trustee was entitled to rely on Rule 37(c)'s automatic preclusion of the Horizon Group Defendants use of such evidence at any hearing or trial. Thus, the Horizon Group Defendants should be precluded from using such evidence to support their expert's report, because they denied the Trustee's experts prior access to the same information. Contrary to the Michaels argument, the late production of the information is exactly what Rule 37(c) prohibits.

Kibler admittedly had a difficult task. She had to issue a solvency opinion finding that the fair value of the minimal assets of a zero-profit captive alter ego management company exceeded the fair value of its substantial liabilities arising from its undisputable violations of the RLTO. In fact, she has not issued such an opinion. She has proffered a carefully limited opinion that the "services" that the

---

[1] As reflected in the Horizon Group Defendants attachments, the Trustee received the runaround with respect to the production and turnover of documents, including being provided "access" to the Yardi system with no data and having to subpoena and obtain production of most of the damaging emails and other communications from third parties. The only relevant fact is that the Horizon Group Defendants refused to produce the gross rents information until it was to their benefit to do so.

Debtor offered had a market-place value. Kibler Report at 29-55; Kibler Dep. p. 94. Kibler then extrapolates that because the services had a value in the marketplace, the Debtor had an enterprise value, provided that the Horizon Group Companies and the Michaels[2] acted against their economic and legal interests and entered into a superseding market rate agreement ceding control of the management of their portfolio to a third party at a higher cost. This hypothetical condition is not based in reality and is therefore unreasonable and inappropriate. Since this hypothetical condition is wholly speculative and improbable, and contrary to all evidence, it is not a reasonable assumption, or a reliable methodology, upon which she could base her opinion. Thus, her solvency opinion should be excluded.

## ARGUMENT

**A.    RULE 7037 PRECLUDES THE HORIZON DEFENDANTS' USE OF THE HORIZON GROUP COMPANIES' GROSS RENTAL INCOME TO SUPPORT THE KIBLER REPORT AND OPINIONS.**

The Horizon Defendants' argument sets Rule 37(c) on its head. The purpose of the rule is to compel compliance with a party's disclosure obligation during the discovery period. The Rule is self-executing and prohibits the offending party's use of withheld information to supply evidence in support of a motion or at hearing or trial. *Hung Tran v. Hien Tran*, 2024 U.S. Dist. LEXIS 202737 (M.D. Fla. 2024). The Trustee was not obligated to file a motion to enforce the sanction, and the Horizon Defendants bear the burden of demonstrating substantial justification for the nondisclosure and

---

[2]    In addition to the Horizon Group Companies agreeing to pay a markup on the cost of the services, Jeffrey would have foregone his $600,000 annual salary and his employee benefits. A wholly implausible assumption. *See* Kibler Report at 41 c. and 63 ("Normalizing Debtor's executive compensation.")

3

that the violation was harmless. *Id.* A party does not avoid the consequences of violating the Rule by producing the information in connection with the motion, or at the hearing or trial.

The gross rental information was clearly within the scope of the Trustee's production requests and was also subject to being provided by the Debtor pursuant to its cooperation and turnover obligations under the Bankruptcy Code generally. The Debtor and the Horizon Group Defendants refused multiple requests for the information claiming it would be burdensome and that it was not relevant to the case. *See* Motion at **Exhibit 3,** both of which grounds were refuted by Kibler. Kibler Report ¶ 68; Kibler Dep. 9-12. Thus, the failure to produce the information was not substantially justified.

The failure to produce the information was not harmless. The Trustee sought the information for, *inter alia*, his experts use in connection with their reports on the Debtor's likely rationalized income for purposes of determining, *inter alia*, the reasonableness of executive compensation. As a result, the Trustee's experts were forced to rely on estimates of the likely gross rental income of the Horizon Group Companies in making their reports, rather than the actual data. Moreover, the Trustee incurred costs in attempting to secure the Horizon Group Defendants ongoing cooperation in the production of clearly relevant information and the turnover of the Debtor's financial records.

As the Horizon Group Defendants concede the information was readily available and they simply withheld it to provide their expert with a tactical

advantage. A party may not use evidence that was responsive to discovery requests or a required disclosure under Fed. R. Civ. P. 26(a) but was not disclosed. *Andrews v. CBOCS W., Inc.*, No. 09-cv-1025-WDS-SCW, 2011 U.S. Dist. LEXIS 17505, at *2-3 (S.D. Ill. Feb. 23, 2011). The Kibler report and her opinions that are based on the gross rental income information must be excluded as a sanction.

**B. KIBLER'S OPINION OF SOLVENCY IMPROPERLY RELIES ON MARKET VALUE OF SERVICES RATHER THAN FAIR VALUE OF ASSETS DURING THE FOUR YEARS PRECEDING BANKRUPTCY**

The purpose of the solvency analysis to determine whether that Debtor had sufficient assets to pay all of its creditors at the time of a challenged transaction under the conditions that existed at the time of the transfer. The Kibler Report is inadmissible because it fails to express an opinion as to the fair value of the debtor's assets as they existed but rather concludes an enterprise value based the value of the Debtor's services in the marketplace that could have been realized based on a market rate agreement that did not exist and had no probability of existing during the relevant time period. Thus, apart from her improper use of unreliable hypotheticals as a methodology, a separate ground for exclusion, Kilber's solvency opinion fails because the value of the Debtor's services is not relevant to the determination of the fair value of its assets, the only thing it could have transferred to a purchaser in a sale. Moreover, Kibler's conclusion that the Debtor's assets must be valued on a going concern basis is simply wrong. *Newman v. Associated Bank, N.A. (In re World Mktg. Chi., LLC),* 574 B.R. 670 (Bankr. N.D. Ill. 2017) (Rejecting argument that debtor's assets must be valued on a going concern basis). The Debtor's assets and particularly

5

its contractual rights did not support a going concern value, as Kibler herself conceded. Kibler Dep. at pp. 94-96.

The appropriate methodology that Kibler should have applied was to value the Debtor's assets at liquidation, something which is now conceded to be no more than $75,000 and consider a going concern premium if the Debtor could reasonably be anticipated to generate future profits. The Debtor's ability to generate future profits was wholly dependent on its entering into a market rate agreement, something it could not compel the Horizon Group Companies to do. Because it was wholly improbable and speculative that the Horizon Group Defendants would have converted the Debtor's management agreement to a market rate agreement, an assumption of future profits is unreasonable. Had Kibler simply asked Daniel whether he would have been willing to pay more for the Debtor's assets, he would have answered with a resounding no. In fact, while serving as a fiduciary to the estate, Daniel wanted to pay as little as possible for the Debtor's assets, not more. **Exhibits 2 and 3**. Since Kibler opinion does not value the Debtor's assets as they existed on the relevant transfer dates, it is not relevant and must be excluded.

C. **KIBLER'S ASSUMPTION OF A MARKET RATE CONTRACT TO ESTABLISH A VALUATION IS NOT AN RELIABLE METHODOLOGY FOR AN HISTORICAL VALUE.**

The American Institute of Certified Public Accountants (AICPA) and the Association of Insolvency and Restructuring Advisors (AIRA) provide specific guidance on valuing distressed businesses. The AICPA "Considerations when valuing distressed or impaired businesses FAQs" and the "Accounting and Valuation Guide: Business Combinations," provide practical guidance and best practices for accounting

6

and valuations related to business combinations, which can be relevant when evaluating with distressed entities. Likewise, AIRA has developed the "Standards for Distressed Business Valuation," effective since March 1, 2014. Both AICPA and AIRA provide guidance on the use of hypothetical conditions in valuations, particularly concerning distressed businesses. Both AICPA and AIRA require disclosure of the purpose and basis and in particular its relevance to the valuation.

In valuation, a hypothetical condition is an "assumption" made contrary to known facts as of the valuation date. It assumes something exists or occurs that does not actually exist or has occurred. Hypotheticals may assume completion of a transaction, the approval of a reorganization plan, regulatory approval for a product or transaction, or particular market or economic conditions.

A hypothetical condition is different from an "assumption", which is a condition believed to be true as of the valuation date based on reasonable expectations. Assumptions (not hypothetical conditions) may include expected future performance based on reasonable projections, market conditions as of the valuation date, going concern vs. liquidation assumptions, and industry norms and benchmarks. The key distinction is that that a hypothetical condition assumes something that is not true as of the valuation date, while an assumption reflects a reasonable belief about conditions existing or expected based on known information. Thus, an assumption could be true, while a hypothetical condition is not true. In valuations, hypothetical conditions must be clearly disclosed to ensure transparency and relevance to the assignment, while reasonable assumptions may be justified based on facts and

7

industry norms. With respect to the reliability standards of Rule 702, opinions based on assumptions are admissible, but those based on hypothetical conditions are not, because they lack any sense of reliability and are purely speculative.

> The Court may take into account circumstances on the valuation date that were discovered at a future time, even facts purposely concealed at the time of the valuation. Under this view, such consideration does not implicate improper hindsight as it involves applying current awareness of facts actually in existence at the time of the valuation rather than application of facts did not exist at the time of valuation.

*Mukamal v. Nat'l Christian Charitable Found., Inc.,* 588 B.R. 633, 640 (Bktcy S.D. Fla. 2018).

Since hypothetical conditions are speculative and contrary to know facts, they fail the reasonableness and reliability standard for admissibility. For the most part, hypothetical conditions that cannot rise to the level of assumptions, which require some reasonable evidentiary basis, are inadmissible as a basis for expert opinions. *Red Hawk, LLC v. Colorforms Brand LLC*, 638 F. Supp. 3d 375 (S.D. N.Y. 2022). All of the authorities proffered by the Horizon Group Defendants do not support the use of an improbable hypothetical condition to support a retroactive solvency analysis. Despite the sometimes mislabeling of the terms, all of these authorities in substance involve appropriate and reasonable assumptions, not speculative hypothetical conditions. *Dealer Mgmt Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029 (N.D. 2022)("It is proper for counsel to furnish factual assumptions to experts as long as the factual assumptions are supported by the record."); *Spanish Springs Pilots Assoc, Inc. v U.S. Dep't of Interior,* 328 F. App'x 365 (9th Cir 2009)(Appraiser's assumption that property was typical for the market was reasonable even though it was irregular in shape

because it had been designed to accommodate lessee and the shape of the property did not have a material effect on value.); *Cabot E. Broward 2 LLC v. Cabot, 2018 U.S. Dist. LEXIS 243512, *10.* (Appraiser was allowed to assess the impact on a property's value of an ongoing embezzlement scheme by including established amount of the embezzled funds as part of income stream.); *People v Kinder Morgan Energy Partners, L.P.* 159 F. Supp. 3d 1182 (S.D. Cal. 2016)(Appraiser simply provided an alternative valuation of a property assuming it was not encumbered by a lease in determining highest and best use for the former San Diego Chargers stadium site.)

Thus, when an expert uses an assumption, it is assuming a fact that may not exist but could have existed or might exist in the future. For example, it is common for a real estate appraiser to assume that a recently completed, but vacant, apartment building will lease up at market rent and absorption such that will generate a cash flow that the appraiser can use to derive a current value for the building. This is a reasonable assumption under the standards, particularly if it is based on data reflecting current and predictions of market rent and absorption. As discussed in the motion to exclude, although hypotheticals may be used in valuation analysis, they must be "reasonable and appropriate" and have "analytically sound bases" so that they are more than mere "speculation" by the expert. *Smith v Ford Motor Company*, 215 F.3d 713, 719 (7th Cir. 2000).

Kibler assumption that the Debtor had a market rate contract throughout the four years preceding the bankruptcy as a hypothetical condition, is not reasonable and appropriate. Kibler use of this hypothetical condition is even more problematic

9

considering that the Michaels had the opportunity to amend the management agreement during the four years prior to the bankruptcy and at the time of the bankruptcy sale but chose not to do so. Thus, there is no reasonable basis for Kibler to assume that the Horizon Group Defendants would have entered into a new management agreement that would have made value available to the Class Action claimants and other creditors, particularly when they actively sought to justify a low value for the debtor's assets at the time of sale.

Kibler could have just as easily assumed that the Daniel would have honored his obligations under the Operating Agreement to provide the Debtor with sufficient capital, that the Horizon Group Companies would have honored their obligations to reimburse all of the Debtor's expenses, or that some third-party would have contracted with the Debtor to manage a portfolio 10,000 apartments at a market rate and conclude that the Debtor was solvent. Since Daniel and the Horizon Group Companies have not honored their existing obligations to the Debtor, it is unreasonable for Kibler to assume that they would have taken on additional obligations to the Debtor.

### D. KIBLER IS NOT QUALIFIED TO VALUE THE CLASS ACTION LITIGATION AND OTHER UNLIQUIDATED LIABILITIES.

The Horizon Group Defendants do not substantively dispute that Kibler is not qualified to value the Class Action liability, and she conceded as much in her deposition. Kibler Dep. at pp. 6-9. Rather, they argue that she was entitled to rely upon managements estimates of the value of the liabilities and to selectively incorporate those parts of the Skadden analysis that supported her opinion and

disregard those parts that did not. She also incorrectly analyzed the Bonnen claim as a "contingent" liability, a liability that was dependent on a future uncertain event. In fact, the Bonnen claim is a disputed liability, one where the events giving rise to the liability have occurred and the liability is simply waiting future resolution by arbitration, litigation or settlement. Kibler's opinion is of no value to the Court in assessing the fair value of the liabilities. As such, it does not meet the standard for admissibility. Rather, the Court should consider the Skadden "real time" analysis and the final determination as being the most probative evidence of the fair value of the RLTO liabilities.[3]

## **CONCLUSON**

The Horizon Group Defendants should be barred from relying on the gross rental information which they failed to produce during discovery. Kibler's opinion should be excluded because her methodology is unreliable, and her opinions are not helpful to the Court.

Dated: March 20, 2025　　　　　　　　　　　　　　Andrew J. Maxwell, Trustee

　　　　　　　　　　　　　　　　　　　　　　　/s/ Paul M. Bauch
　　　　　　　　　　　　　　　　　　　　　　　　One of His Attorneys

---

[3] The Horizon Group Defendants reliance on the Court's summary judgment opinion finding that the unknow security deposit creditors could not be considered golden creditors is not relevant to the current inquiry of whether there were additional undisclosed liabilities that should have been considered for purposes of the solvency analysis. As the record reflects, such creditors do exist, Doc. 324 and 325, these creditors were not members of the class unless they existed in the limited two-year class period and also held interest underpayment claims, not all of them did. The Trustee has only been unable to identify them because the Horizon Group Defendants have refused to turn over the Debtor's records that would reflect their identity. In any event, the Debtor was insolvent regardless of whether such liabilities were considered by the experts.

11

Paul M. Bauch (ARDC #6196619)
Anthony J. O'Neill (ARDC #6295313)
Rezarta C. melo (ARDC#6343034)
Bauch & Michaels, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel.: (312) 588-5000
Fax: (312) 427-5709
pbauch@bmlawllc.com
aoneill@bmlawllc.com
rmelo@bmlawllc.com